**In the Interest of: Johnathan and Joseph McELHENEY, Children.**

No. 9328.

Court of Appeals of Texas, Texarkana.

Nov. 13, 1985.

**162**

Sybil K. Colson, East Texas Legal Services, Paris, for Janice McElheney.

David Holmes, Paris, attorney ad Litem.

Lewis F. Boyd, Regional Atty., Tex. Dept. of Human Services, Paris, for Texas Dept. of Human Resources.

Jack Herrington, Paris, for Albert McElheney.

Eric Clifford, Paris, for intervenors.

BLEIL, Justice.

Albert and Janice McElheney each appeal from a judgment terminating the parent-child relationship between them and their two children. They question the consolidation of the termination and conservatorship proceedings, the admission of evidence of a parent's homosexuality, the propriety of the trial court's remarks to the jury, and the evidentiary support for the verdict. We resolve these questions against the McElheneys and affirm.

The Texas Department of Human Resources initiated this suit to terminate the parent-child relationship between the McElheneys and their children. Sam Coffin, the maternal grandfather, and his wife intervened seeking custody. A jury found that both McElheneys had knowingly allowed their children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children; that the mother had knowingly engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the children's physical or emotional well-being; and that termination of the parent-child relationship between both parents and the children was in the best interest of the children. Managing conservatorship of both children was granted to Sam Coffin.

■ Janice McElheney complains that the trial court erred in combining the termination and custody proceedings, claiming that the evidence concerning custody prejudiced the jury against her on the termination issues.

Courts routinely combine suits for termination of parental rights with adoption proceedings. *See, e.g., Cruz v. Scanlan,* 682 S.W.2d 422 (Tex.App.—Houston [1st Dist.] 1984, no writ); *Speed v. Guidry,* 668 S.W.2d 807 (Tex.App.—San Antonio 1984, no writ); *In the Interest of D.E.W.,* 654 S.W.2d 33 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.); *In the Interest of Jones,* 566 S.W.2d 702 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.); *Patton v. Welch,* 538 S.W.2d 7 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.). Tex.Fam.Code Ann. § 16.08 (Vernon Supp.1985) refers to joinder of a termination suit with a petition for adoption. Suits seeking termination have also been consolidated with suits seeking managing conservatorship. *Carter v. Dallas County Child Welfare Unit,* 532 S.W.2d 140 (Tex.Civ.App.—Dallas 1975, no writ).

Tex.R.Civ.P. 174(a) permits consolidation of actions involving a common question of law or fact. In severing and consolidating causes, the trial court exercises broad discretion. *Cherokee Water Co. v. Forderhause,* 641 S.W.2d 522 (Tex.1982); *McGuire v. Commercial Union Ins. Co. of N.Y.,* 431 S.W.2d 347 (Tex.1968). Janice McElheney shows no injury resulting from the simultaneous trial of the termination and custody issues. Therefore, we find no abuse of discretion.

■ Janice McElheney maintains that the court erred in allowing testimony concerning her sexual preferences. While Texas cases hold that termination based

*solely* on a parent's status is improper, status may be one of the *several* factors considered. *H.W.J., Sr. v. State Dept. of Public Welfare*, 543 S.W.2d 9 (Tex.Civ.App. —Texarkana 1976, no writ); *Carter v. Dallas County Child Welfare Unit*, supra. Therefore, the court did not err in admitting evidence of this nature.

▪ Furthermore, Janice McElheney failed to preserve any error concerning the admission of evidence of her sexual preference. The issue of homosexuality was raised by the TDHR attorney during examination of three witnesses: one of Janice McElheney's neighbors, a psychologist, and the father of the children. Janice McElheney's attorney made two objections to questions of sexual preference posed to the neighbor and one objection to such a question posed to Albert McElheney. She made no objection to a question on that issue posed to the psychologist. All three objections were overruled. The objections either were couched in general terms or failed to state any ground. Generally, an objection to the admissibility of evidence which fails to specify a ground or which is too general does not preserve error for review. *Seymour v. Gillespie*, 608 S.W.2d 897 (Tex. 1980); *Brown & Root v. Haddad*, 142 Tex. 624, 180 S.W.2d 339 (1944).

▪ Janice McElheney also contends that the trial court improperly commented on the weight of the evidence. She specifically refers to a comment by the trial judge to Sam Coffin during cross-examination. Coffin was asked by counsel whether, if he were awarded custody of the children, he would permit their mother to visit them so long as she did so properly. Coffin responded that he would, unless ordered not to do so by the court. After more questions, the trial judge interjected the following comment:

THE COURT: Let me see if I can clear this up. Now, Mr. Coffin, I believe you said that you will not prohibit your daughter from visiting the children in your home unless you were ordered by a court. I'm trying to get that straight in my mind what your position is. Are you

going to let your daughter visit with the children in accordance with whatever rules you set? Right now I'll tell you no court is going to order you to let her come there, at least as a result of this hearing.

MRS. COLSON: I object, Your Honor.

THE COURT: All right. Your objection is noted. What is your position going to be?

THE WITNESS: I guess I was talking more of an attitude than anything else. My position is Janice is my daughter. I will not bar her from my home unless it is ordered, stipulated by this court in order for me to keep these children.

THE COURT: So if she comes in drunk into your home and raising [C]ain and starts running off with the children, you are going to let her have free run of the place?

THE WITNESS: No, sir.

THE COURT: Is it going to take a court order to protect those children?

THE WITNESS: No, sir.

THE COURT: All right. Explain yourself.

THE WITNESS: Okay. We were talking visitation, I thought.

THE COURT: That's exactly what we are talking about.

THE WITNESS: It didn't enter my mind of a running drunk coming in my house.

THE COURT: Well, it should enter you (sic) mind.

THE WITNESS: Well, if it does, I would call the law and have her arrested.

THE COURT: All right.

Because Janice McElheney failed to obtain a ruling on the objection, she cannot complain of the court's ruling. Moreover, she stated no grounds for the objection. Thus, she preserved no error. *Seymour v. Gillespie*, supra; *Brown & Root v. Haddad*, supra.

▪ Later the trial judge made additional remarks to the jury. In response to a question from the TDHR counsel, Coffin indicated that if he were granted custody of the children, the children's mother would

not have access to the children unless the court granted her visitation rights. At this point the court remarked that,

> If her rights are terminated as to the children, she is not going to have any rights of visitation. She is just like some stranger. So let's be clear about that. No court would have authority to order that any more than I could reach out and grab somebody off the street and say, "You have authority to visit the children." If parent's rights are terminated, there is no right of visitation of that parent and no court is going to order it. So I don't want anyone to be under any misaprehension (sic) about that.

The court then excused the witness and declared a fifteen minute recess. When court reopened, Janice McElheney's attorney again objected to the court's original statement.

> MRS. COLSON: I would object to the statement made by the court to the fact that no court would give my client any visitation rights whatsoever because it's extremely prejudiced and biased towards my client's rights, and I'm going to ask that a mistrial be granted at this time.
> THE COURT: The court notes that the grounds of the objection were stated long after the testimony was elicited and the objection was originally made and the motion for mistrial is denied.
> MRS. COLSON: I would then ask the court to instruct the jury to disregard that remark.
> THE COURT: The court will take that under consideration.
> MRS. COLSON: And I would ask the court to—
> THE COURT: I don't think the jury has anything to do with deciding possessory rights since that is the court's perogative (sic), visitation rights. They determine the managing conservatorship but the court sets the visitation rights. Anyway, the court takes the matter of the instruction under advisement.

This objection could have been properly overruled as untimely. *Montes v. Lazzara Shipyard,* 657 S.W.2d 886 (Tex.App.—Cor-

pus Christi 1983, no writ). Further, in the charge to the jury the court included instructions that the jury should not construe any of his statements as a comment on the evidence.

The trial judge may not convey to the jury his views concerning the credibility of the witnesses, the weight of their testimony, or the merits of the controversy. 3 R. McDonald, *Texas Civil Practice in District and County Courts* § 11.20.2 (1983). However, we do not construe the words of the trial judge to be a comment on the weight of the evidence. Furthermore, even assuming a timely and specific objection to the court's remarks, the court's instruction to the jury sufficiently cured any error.

■ We now turn to the evidentiary support for the verdict. Tex.Fam.Code Ann. § 15.02 (Vernon Supp.1985) provides, in pertinent part, that parental rights may be involuntarily terminated if the court finds that a parent has (1) knowingly placed or knowingly allowed the child to remain in conditions which endanger the physical or emotional well-being of the child, or (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. In addition, the court must find that termination is in the best interest of the child. *Holley v. Adams,* 544 S.W.2d 367 (Tex.1976).

■ Proof in involuntary termination proceedings is by clear and convincing evidence, which is defined as that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *In the Interest of G.M.,* 596 S.W.2d 846 (Tex.1980). There is no requirement, however, that the evidence be unequivocal or undisputed. *State v. Addington,* 588 S.W.2d 569 (Tex.1979).

The natural relationship between parents and their children is one of constitutional dimension. And, there exists a strong presumption that the best interest of a child is usually served when a child remains with his natural parents. *Wiley v. Spratlan,*

543 S.W.2d 349 (Tex.1976). When reviewing factual sufficiency points of error, we consider all the evidence. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

Without detailing the extensive evidence, we conclude that there was clear and convincing evidence supporting the jury's findings that the parent-child relationship between both parents and their children should be terminated, and that it was in the best interest of each of the two children to do so.

The decree of termination of the trial court purports to terminate the parent-child relationship of the mother and father without reference to the children. Accordingly, the decree is modified to specify that the parent-child relationships between Janice and Albert McElheney and their children, Johnathan and Joseph, are terminated.

As modified, the judgment of the trial court is affirmed.