**In the Interest of J.J. and K.J., Children.**

**No. 06–95–00051–CV.**

Court of Appeals of Texas, Texarkana.

Submitted Aug. 28, 1995.

Decided Oct. 5, 1995.

Rehearing Overruled Oct. 31, 1995.

Ebb B. Mobley, Longview, for Appellants J.J. & P.J.

Virginia Schnarr, Longview, for the children J.J. & K.J.

David Brabham, Gregg County District Attorney, Longview, for The State of Texas.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

J.J. and P.J. appeal from a judgment terminating their parental rights to their two children, a boy and a girl, aged five and four, respectively, at the time of trial. Each challenges the sufficiency of the evidence to support the trial court's findings. Because we

conclude that the evidence is sufficient to support the findings, we affirm the judgment.

■ On October 26, 1992, the paternal grandmother of the two children contacted the Children's Protective Services (CPS) division of the Texas Department of Regulatory and Protective Services to report that the children were being abused and were not receiving proper food or supervision. Following an initial investigation by CPS, P.J. signed a service plan with the agency in February 1993, agreeing to take various actions to improve the care given to her children. One of the provisions of this agreement was that she was not to allow J.J., who at the time was participating in a drug rehabilitation program, to resume living with her and the children due to his history of drug abuse and physical abuse of P.J. The Johnsons divorced on February 16, 1993. CPS removed the children from parental custody and placed them in foster care on April 13, 1993, after discovering that the Johnsons had resumed living with each other. In April 1993, CPS filed a petition to terminate the parent-child relationship between appellants and their children. At the conclusion of the nonjury trial, the court ordered that appellants' parental rights be terminated. Rights which inhere in the parent-child relationship are of constitutional dimension. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *In re G.M.,* 596 S.W.2d 846, 846 (Tex.1980). Because the involuntary termination of parental rights is complete, final, and irrevocable, trial court proceedings that result in such a termination must be strictly scrutinized. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex.1985). The evidence supporting a termination order must be clear and convincing; this standard is both constitutionally as well as statutorily mandated. Act of May 26, 1995, 74th Leg., R.S., ch. 751, § 65, 1995 Tex.Sess.Law Serv. 3888, 3911 (Vernon) (to be codified at TEX.FAM.CODE ANN. § 161.001, as an amendment to Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex.Sess.Law Serv. 113, 212 (Vernon) (recodification and reorganization of Family Code)); *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re G.M.,* 596 S.W.2d at 847; *Slatton v. Brazoria County Protective Servs. Unit,* 804 S.W.2d 550, 555 (Tex.App.—Texarkana 1991, no writ). In order to qualify as clear and convincing, the evidence must be of such a measure or degree of proof as will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Sess.Law Serv. 113, 122 (Vernon) (to be codified at TEX.FAM.CODE ANN. § 101.007); *In re G.M.,* 596 S.W.2d at 847; *In re McElheney,* 705 S.W.2d 161, 164 (Tex.App.—Texarkana 1985, no writ).

Section 161.001 of the Family Code establishes the requirements for involuntary termination of a person's parental rights. First, the trial court must find that the parent has committed one of the acts enumerated in subsection (1). Second, pursuant to subsection (2), the court must find that termination of the parent-child relationship is in the best interest of the child. *Richardson v. Green,* 677 S.W.2d 497, 499 (Tex.1984).

The trial court made the following three findings, based on the statutory requirements of Section 161.001: (1) that each appellant knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical and emotional well-being of the children; (2) that each appellant knowingly engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical and emotional well-being of the children; and (3) that termination of the parent-child relationship between each appellant and the children was in the best interest of the children.

■ In considering a challenge to the sufficiency of the evidence, we are required to examine all of the evidence in the record and to set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). The clear and convincing standard of proof required at the trial court level to terminate parental rights does not alter this fundamental standard of appellate review. *Faram v. Gervitz–Faram,* 895

S.W.2d 839, 842 (Tex.App.—Fort Worth 1995, no writ); *D.O. v. Texas Dep't of Human Servs.*, 851 S.W.2d 351, 353 (Tex.App.—Austin 1993, no writ); *see also State v. Turner*, 556 S.W.2d 563, 565 (Tex.1977); *Meadows v. Green*, 524 S.W.2d 509, 510 (Tex.1975) (clear and convincing standard of appellate review disapproved); *contra Harris v. Herbers*, 838 S.W.2d 938, 941 (Tex.App.—Houston [1st Dist.] 1992, no writ); *Wetzel v. Wetzel*, 715 S.W.2d 387, 389 (Tex.App.—Dallas 1986, no writ) (appropriate standard of review is whether the trier of fact could reasonably find that the fact was highly probable).[1] Because the trial court's order terminated the parental rights of both parents, and because both parents appeal that order, we examine the sufficiency of the evidence separately for each appellant.

J.J. testified that he used crack cocaine in the home while the children were present. He testified that he physically abused P.J. and that this might have occurred while the children were present. P.J. testified that J.J. did physically abuse her while the children were present. J.J. also testified that, while living with the children, he used food stamps to obtain crack cocaine. J.J. further testified that, as of the date of the trial, he had been in jail numerous times during the preceding year and a half on various charges, including possession of crack cocaine and theft, and that he was currently in jail for violation of his probation.

■ Based on these facts, the trial court could reasonably have concluded that it was highly probable that J.J. engaged in conduct warranting the termination of his parental rights. Although there was little evidence that J.J. committed any direct physical or emotional abuse of the children, the trial court could nevertheless have found that his conduct endangered his children's well-being. In order for parental conduct to constitute endangerment of a child's well-being, it is not necessary that the conduct be directed at the child or that the child actually suffer injury; rather, it is sufficient that the child's well-being be jeopardized or exposed to loss or injury. *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987). Further, the specific danger to the child's well-being need not be established as an independent proposition, but may instead be inferred from parental misconduct. *Id.* Also, evidence of a parent's imprisonment may contribute to a finding that the parent engaged in a course of conduct which endangered a child's physical or emotional well-being. *Id.* at 534; *Harris*, 838 S.W.2d at 942.

■ In light of J.J.'s admissions of spousal abuse and drug abuse while in his children's presence and his repeated instances of imprisonment, we are unable to say that the trial court erred in finding that he knowingly engaged in conduct which endangered the physical and emotional well-being of the children. In addition, the trial court could have reasonably concluded that, by persistently engaging in such conduct, he knowingly placed his children in conditions or surroundings which endangered their physical or emotional well-being.

---

**1.** In rejecting an intermediate standard of appellate review, we adhere to an unambiguous directive of the Texas Supreme Court. *See Meadows v. Green*, 524 S.W.2d 509, 510 (Tex.1975). We note, however, that this rule was formulated at a time when that court explicitly disapproved of an intermediate standard of proof at the trial level as well. *See State v. Turner*, 556 S.W.2d 563, 565 (Tex.1977). In the intervening years, the court has sanctioned the use of the clear and convincing standard of proof at the trial level in certain types of cases, including the termination of parental rights. *In re G.M.*, 596 S.W.2d 846, 847 (Tex.1980); *see also State v. Addington*, 588 S.W.2d 569, 570 (Tex.1979) (clear and convincing evidence required in civil commitment proceedings). The courts of appeals have disagreed over whether this new standard of proof for trial courts requires the application of a corresponding, intermediate standard of appellate review. *Compare Neal v. Texas Dep't of Human Servs.*, 814 S.W.2d 216, 222 (Tex.App.—San Antonio 1991, writ denied); *Williams v. Department of Human Servs.*, 788 S.W.2d 922, 926 (Tex.App.—Houston [1st Dist.] 1990, no writ); and *Neiswander v. Bailey*, 645 S.W.2d 835, 835–36 (Tex.App.—Dallas 1982, no writ) (applying new, intermediate standard of review) *with In re A.D.E.*, 880 S.W.2d 241, 245 (Tex.App.—Corpus Christi 1994, no writ); *Oadra v. Stegall*, 871 S.W.2d 882, 892 (Tex.App.—Houston [14th Dist.] 1994, no writ); and *Slatton v. Brazoria County Protective Servs. Unit*, 804 S.W.2d 550, 556 (Tex.App.—Texarkana 1991, no writ) (rejecting alternative standard). In light of this uncertainty, we believe it might be appropriate for the supreme court to revisit this issue.

Furthermore, the trial court did not err in finding that there was clear and convincing evidence that terminating J.J.'s parental rights was in the children's best interest. J.J. testified that since the time the children were placed in foster care he had continued to use crack cocaine, and he stated that he could not guarantee that he would not continue to do so in the future. He admitted to a history of physical abuse of P.J. P.J. testified that this abuse continued after the children were placed in foster care and after the divorce. Although J.J. was scheduled to be released from jail three days after the trial was held, he was to remain on probation for seven years, and his past conduct indicated that he had difficulty complying with the terms of probation. J.J. also testified that he himself did not believe the children should be returned to him upon his release from jail. The trial court therefore did not err in finding the statutory requirements for termination of parental rights satisfied as to appellant J.J.

 P.J. testified that she used crack cocaine with her husband while the children were present, and she admitted that the environment created by this drug abuse was not good for the children. In addition, P.J. testified that she was an alcoholic and that she had been unable to comply with the requirement of her CPS service plan that she stay sober. She testified that, as of the date of trial, she had been sober for twenty-three days. Furthermore, P.J. testified that there had been occasions when she had left the children completely unattended. Finally, she specifically violated another requirement of her CPS service plan by allowing J.J. to resume living with her and the children in April 1993, despite his history of drug abuse and physical abuse of her. Given these facts, all of which P.J. herself admitted, we are unable to say that the trial court erred in finding clear and convincing evidence that she engaged in conduct that endangered the children's well-being and that she also placed them in circumstances or surroundings that so endangered them.

P.J. further testified that since the children were taken from her and placed in protective custody she has lived with J.J.

periodically, has continued to use crack cocaine, has been unable to remain sober, and has had no consistent employment. In addition, during this period, she worked as a prostitute for J.J. on more than one occasion. P.J. stated that she believed it would be best for the children to be placed somewhere other than her home. In light of this evidence, we additionally hold that the trial court did not err in finding, by clear and convincing evidence, that termination of P.J.'s parental rights was in the children's best interest.

We affirm the trial court's judgment.