# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00474-CV

**Donald Perrett and Sharon Perrett, Appellants**

**v.**

**Texas Department of Protective and Regulatory Services, Appellee**

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 391ST JUDICIAL DISTRICT**
**NO. D-99-0453-J, HONORABLE RAE LEIFESTE, JUDGE PRESIDING**

This is a parental rights termination case. *See* Tex. Fam. Code Ann. ' 161.001 (West Supp. 2002). In a nonjury trial, the trial court terminated the parental rights of Sharon Perrett to four of her children, C.M., D.P., A.P., and B.P. Donald Perrett was the natural father of three of the children, D.P., A.P., and B.P., and the trial court terminated his parental rights to those children in the same decree. Both Sharon and Donald appeal the trial court=s decision to terminate their parental rights. We will affirm the decree.

### Background

The Texas Department of Protective and Regulatory Services (the ADepartment@) became involved with the Perrett family in the fall of 1998. In the fall of 1999, the Department filed an original petition for protection, conservatorship, and termination in a suit affecting the parent-child relationship. *See*

Tex. Fam. Code Ann. '' 101.032, 161.001 (West 1996 & Supp. 2002). The Department sought to terminate the parent-child relationships of Sharon and her six children, C.M., K.F., C.F., A.P., D.P., and B.P., alleging ten grounds for termination. *Id*. ' 161.001(1)(A)-(G), (N)-(P). Also, in the same petition, the Department sought to terminate the parent-child relationships of Donald, and his three children, D.P., A.P., and B.P., alleging nine grounds for termination. *Id*. ' 161.001(1)(A)-(F), (N)-(O). Further, the Department sought to terminate the parental rights of C.M.=s unknown father. The court signed temporary orders and appointed the Department temporary managing conservator of the children, ordered that the Perretts each pay child support of $150 per month, and that they complete all aspects of the Department=s reunification plan. After rendering temporary orders, the court held several permanency status hearings. In June 2000, the trial court granted the Department=s motion for an extension of time and the statutory dismissal date was extended until April 21, 2001. *See* Tex. Fam. Code Ann. ' 263.401 (West Supp. 2002).

Before trial, the court severed the parental rights termination action regarding K.F. and C.F., appointed their natural father, who is not a party to this appeal, permanent managing conservator, and ordered that K.F. and C.F. be returned to him. After maintaining for months that she did not know the identity of C.M.=s father, Sharon alleged for the first time, two days before trial, that Dwayne Andre Evans was the father of C.M. The Department contacted Evans, who denied that he could be the father of C.M., as his relationship with Sharon preceded the time of conception of the child by a number of years. On April 12, 2001, Evans executed and filed in the trial court an affidavit of waiver of interest in which he waived

2

citation and notice of the trial and agreed that any rights he has or might have in C.M. could be terminated in the proceeding.

At the time of trial, C.M. was fourteen years old, D.P. was ten years old, A.P. was nine years old, and B.P. was seven years old. On April 13, 2001, following a trial to the court, the judge determined that the parent-child relationships between Sharon and her four children should be terminated and the parent-child relationships between Donald and his three children should be terminated. Specifically, the judge terminated both Donald=s and Sharon=s parental rights based on four grounds alleged by the Department. *See* Tex. Fam. Code Ann. ' 161.001(1)(D), (E), (N), and (O). The judge also determined that termination of the Perretts= parental rights was in the children=s best interest.

## Discussion

Donald and Sharon contend that the evidence is factually insufficient to support the district court=s decision to terminate their parental rights to their children and that insufficient evidence supports the court=s decision that termination was in the children=s best interest.

### *Termination of parental rights*

Section 161.001 sets out a two-pronged test for involuntary termination of the parent-child relationship. *Id.* ' 161.001(1), (2). The trial court must find, by clear and convincing evidence, that the parent has engaged in one of the grounds for termination and that termination is in the best interest of the child. *Id.*; *Leal v. Texas Dep=t of Protective & Regulatory Servs.*, 25 S.W.3d 315, 318 (Tex.

3

App.CAustin 2000, no pet.).  Proof of one prong does not relieve the petitioner from establishing the other.  *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976).

Because termination of parental rights is such a drastic act, due process requires that the petitioner justify termination by a heightened burden of proof.  *Leal*, 25 S.W.3d at 318-19; *In re D.T.*, 34 S.W.3d 625, 630 (Tex. App.CFort Worth 2000, pet. denied); *see also In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.CTexarkana 1995, writ denied) (clear and convincing evidence is constitutionally and statutorily required in termination proceeding).  Clear and convincing evidence is that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the proposition sought to be established.  *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *Leal*, 25 S.W.3d at 319.  The clear and convincing standard creates a higher burden of proof because of the severity and permanency of the termination of the parent-child relationship.  *In re D.T.*, 34 S.W.3d at 630.

*Standard of review*

In reviewing the factual sufficiency of the evidence, we view all of the evidence in a neutral light and set aside a judgment only if the evidence supporting it is so weak or contrary to the weight of the evidence as to be clearly wrong and unjust.  *Id.*; *D.O. v. Texas Dep=t of Human Servs.*, 851 S.W.2d 351, 353 (Tex. App.CAustin 1993, no writ).  The heightened clear and convincing standard of proof at trial does not change the standards by which an appellate court reviews the sufficiency of the evidence.  *Leal*, 25 S.W.3d at 320.  Nevertheless,  our sufficiency review in a parental rights termination case necessarily

4

incorporates consideration of whether the challenged finding has been proven by clear and convincing evidence. *Id.*

### *Statutory termination grounds*

#### Section 161.001(1)(O)

The trial court found as one of the grounds for termination that Donald and Sharon failed to comply with the provisions of a court order that established the actions necessary for them to obtain the return of their children. *See* Tex. Fam. Code Ann. ' 161.001(1)(O).

Section 161.001(1)(O) provides that parental rights may be terminated if the court finds by clear and convincing evidence that (1) the parent failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child, (2) who has been in the permanent or temporary managing conservatorship of the Department for not less than nine months, and (3) the child=s removal from the parent was a result of abuse or neglect of the child. *Id.*

### *Summary of evidence related to termination based on section 161.001(1)(O)*

Without reiterating all of the testimony at trial and without delving into every aspect of the family=s history with the Department, we will review portions of the proceedings related to this ground for terminating the Perretts= parental rights to their children.

Valerie Robbins testified that she was the Department caseworker first assigned to the Perrett family in September 1998. The Department became involved with the Perretts after three of their

5

children were found unsupervised and wandering around a junior high school hungry and in dirty clothes. At that time the Perretts and their six children were living in one room at the Skyway Motel in San Angelo. The motel has a reputation as being a location for illegal drug use and other criminal activity. Rather than attempting to remove the children from their parents, the Department developed a plan of service that required Sharon to seek help with her drug use and required her to submit to random drug tests. The plan also required the Perretts to attend parenting classes and attend counseling sessions. Further, the plan provided that Donald was not to leave the children alone with Sharon unless he first checked with the Department. The Department also offered to help the Perretts secure adequate housing for the family. The Department closed the case in February 1999. Robbins testified that it was her opinion that the parties had made no progress as they had failed to participate in most aspects of the Department=s plan and the family continued to live in the one room at the motel.

Angie Voss, a Department investigator, testified that she investigated an allegation that on October 3, 1999, Sharon had left C.F. and K.F. alone in a motel room. Voss explained that some time before her investigation began, Donald left the family at the Skyway Motel to work in California. Sharon split up the children and sent them to live with various relatives. C.F. and K.F., however, remained with Sharon. At some point during Voss=s investigation, Donald returned to San Angelo from California. On his way back he gathered all of the children from the various relatives and returned to the same one room at the Skyway Motel. On October 12, Voss attempted to contact Donald and Sharon and the children by going to the motel. When she arrived, Sharon was not there and Donald was arrested for outstanding warrants

6

and went to jail. With both parents unavailable to care for the children, the Department sought to remove the children to their custody.

On October 25, 1999, the trial court held an adversarial hearing and on November 12, 1999, the trial court rendered temporary orders. The court designated the Department temporary managing conservator of the children, designated Donald and Sharon temporary possessory conservators, and ordered Donald and Sharon each to pay $150 per month as child support for the children. Further, the court ordered (1) that both Donald and Sharon submit to a psychological or psychiatric evaluation and each attend counseling sessions to address specific issues related to the children=s removal; (2) that they both attend, participate in, and successfully complete parenting classes as arranged by the Department; (3) that Donald arrange and attend anger management control classes; (4) that both Donald and Sharon cooperate in preparing the court-ordered drug and alcohol dependency assessment and successfully complete any substance abuse treatment program recommended by the assessment; and (5) that Donald and Sharon comply with each requirement of the Department=s family service plan which included obtaining proper housing and an adequate income to support a stable lifestyle for the family. The children were placed in foster care that was within an area that allowed Donald and Sharon to visit them. A dismissal date of October 2000 was established. *See* Tex. Fam. Code Ann. ' 263.401(a) (West Supp. 2002).

In November 1999, Georgia Brown, a child protective services specialist with the Department, began working with the Perretts to help reunify the family. As of February 2000, Donald and Sharon each completed a psychological examination and submitted to a drug and alcohol assessment. Sharon was diagnosed with a depressive disorder and marihuana and cocaine abuse. It was recommended

7

that she participate in an intensive in-residence drug treatment program. She did not pursue the recommended in-residence program. Donald was diagnosed with intermittent explosive disorder and has a history of being abusive to members of his family. Both parents made numerous excuses for not attending counseling sessions or parenting classes which the Department arranged for them.

Donald and Sharon were scheduled to visit their children on alternate weeks twice a month. Arrangements were made so that each parent visited separately. Since the removal of the children, Brown testified that Sharon visited the children sporadically and, as of June 2000, had not visited her children for two months. In fact, the Department had been unable to contact Sharon between April and June 2000. As of February 2001, the Department last had contact with Sharon on July 19, 2000 and at that time she visited D.P. and A.P. She informed the Department that she was homeless and had no address available for mail. The Department later learned that Sharon had moved in with her mother and all mail was sent to her mother=s home in San Antonio.

Brown testified that in April 2000, Donald informed the Department that he moved to Lubbock looking for employment. Although he said he would seek Department services while in Lubbock, he failed to do so. At some point before trial, although exactly when is unclear from the testimony, Donald returned to San Angelo. Upon his return, he failed to access any Department services required in the family reunification plan. Donald=s visits with his children were also sporadic. Brown testified that Donald had not visited, telephoned or written to the children from October 4, 2000, until the time of trial on April 13, 2001. The Department informed both parents about the effect their absence had on the childrenCthe children looked forward to seeing their parents and were very disappointed when either parent failed to attend a

scheduled visit. Donald had proof of attending only one parenting class, he had not been consistently employed, and he told Brown that he could not support the family financially.

Brown testified that based on her involvement with the Perrett family, it was her opinion that neither Donald nor Sharon had made any changes in their lifestyle, had failed to provide adequate housing for the family, had failed to provide adequate income to support the children, and failed to demonstrate an ability to provide a safe environment for the children. Brown testified that it was her opinion that it was not in the children=s best interest to return them to Donald and Sharon.

As of February 2001, neither parent was exercising their right to weekly visits with their children, neither parent was following the plan of service set up for the safe return of their children as ordered by the court, and both parents continued to show the same instability as when the children were first placed in the Department=s custody. The children no longer asked about visits with their parents. As of February 2001, due to the state of affairs, the Department redirected its permanency plans for the children from family reunification to placement with a relative or adoption.

*Analysis*

It is undisputed that the Department had temporary managing conservatorship of the children from November 12, 1999, until the time of trial in April 2001. Therefore, no controversy exists regarding the requirement under section 161.001(1)(O) that the Department have temporary managing conservatorship of the children for a period of not less than nine months. Additionally, the children were removed from Donald and Sharon=s custody after the Department received a call that the children were left

9

alone in a motel room without supervision, money or food. Upon investigation, Sharon was not present and

Donald was being placed under arrest. Both parents failed to complete any significant portion of the

Department plan=s requirements for family reunification as ordered by the trial court. Under the plan,

Donald and Sharon were to complete substance abuse assessments and follow any recommendations.

Sharon testified that her assessment recommended that she receive in-residence treatment for substance

abuse, but that she refused to obtain the treatment. Under the family service plan, Donald and Sharon were

ordered to attend individual and family counseling sessions. Neither of them participated in any type of

counseling. The plan required Donald and Sharon to attend parenting classes. Sharon failed to attend any

classes and, although Donald testified that he had attended some of the classes, his caseworker testified that

he did not complete the class. Neither parent paid the court-ordered support for their children. Finally,

neither Donald nor Sharon obtained adequate housing for the family. At the time of trial, Donald was living

at the same motel from which the Department had removed the children eighteen months earlier.

We hold that the evidence is sufficient to support the court=s finding that Donald and

Sharon=s parental rights were terminated based on section 161.001(1)(O). The evidence is not so weak as

to make the finding that Donald and Sharon failed to follow the court=s order to follow the Department=s

family service plan manifestly unjust.[1]

---

[1] Because we determined that one of the trial court=s grounds for terminating Sharon=s and Donald=s parental rights is supported by the evidence, it is unnecessary to the disposition of this appeal that we address the other grounds the trial court found for terminating their parental rights.

***Best interest of the children***

Donald and Sharon also challenge the trial court=s ruling that termination of their parental rights was in the children=s best interest. There is a strong presumption that the best interest of a child is served by keeping custody in the natural parents. *In re D.T.*, 34 S.W.3d at 641. Some of the common factors that courts use to evaluate the best interest of a child include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72; *Leal*, 25 S.W.3d at 321. This list of relevant considerations is not exhaustive; other factors may be considered when appropriate. *Holley*, 544 S.W.2d at 372; *Leal* 25 S.W.3d at 322. Likewise a finder of fact is not required to consider all of the listed factors. *Leal*, 25 S.W.3d at 322.

Donald argues that his first psychological evaluation in 1998 revealed that except for his views on physical punishment, he was able to express a sound disciplinary philosophy with the children, that is, consistency, escalating intervention and predictability. Donald argues that taken as a whole this

11

psychological evaluation demonstrates that he can adequately parent the children. Further, he argues that when all of the *Holley* factors are considered in light of the record, it was unreasonable for the court to conclude that the evidence was sufficient to produce a firm belief in the trier of fact that termination was in the children=s best interest. Sharon also argues that there was insufficient evidence presented regarding the best interest of the children. She contends that the only evidence that termination would be in the children=s best interest came from Beverly Hutchins, an adoption specialist with the Department. Further, Sharon contends that the children were old enough that their desires about the future should have been more fully explored.

We review the evidence in light of the *Holley* factors keeping in mind that those factors are not the exclusive means by which to determine whether termination is in the children=s best interest. At the time of trial, Sharon was incarcerated on a drug conviction. Further, before her conviction and imprisonment, Sharon failed to obtain the in-residence substance abuse treatment recommended to her. During the three years that the Department was involved with the Perrett family, Donald worked sporadically in California and Lubbock, but eventually returned to the same one-room motel room in San Angelo despite the motel=s reputation as a location for drug use and criminal activity. Donald did not contact the children at all for the six-month period immediately preceding trial, that is he did not attend his scheduled visits, call, or write letters to the children.

In February 2001, the Department changed its focus for the family from reunification to placement with a relative or adoption. Hutchins testified that a former foster family had expressed interest in

adopting three of the children. Mary Owens, the appointed guardian ad litem for the four children, testified that it was her opinion that termination of Donald=s and Sharon=s parental rights would be in the children=s best interest. Owens was aware that the Department planned to have the children adopted. She was also aware that one of the foster families wanted to adopt three of the children. Also, the foster parents for the fourth child expressed an interest in adopting the child if termination occurred. She testified that the children had been questioned about being adopted by the foster families and all of the children wanted to continue to live with their foster families. Georgia Brown, involved with the Perrett family since November 1999, testified that, in her opinion, it would not be safe, or in the children=s best interest from a physical or emotional perspective, to place them back with either Donald or Sharon. In talking to the children, Brown testified that the children told her that they feel safe in their foster homes. One of the children told her that he now knew where his next meal was coming from and he no longer worried about whether he was going to get to eat. It was Brown=s opinion that Donald and Sharon had been given a reasonable period of time to make environmental as well as personal changes and that they failed to do so.

We hold that sufficient evidence supports the trial court=s finding that termination of Donald=s and Sharon=s parental rights was in the children=s best interest. Further, the evidence supporting the court=s finding that termination was in the children=s best interest was not so weak as to render the court=s finding manifestly unjust.

**Conclusion**

13

We conclude that the trial court=s ground for terminating Donald=s and Sharon=s parental rights under section 161.001(1)(O) is supported by evidence that is not so weak as to render the finding manifestly unjust.  Further, we hold that the court=s ruling that termination of their parental rights is in the children=s best interest is also supported by evidence that is not so weak as to render it manifestly unjust.  Donald=s and Sharon=s appellate issues are overruled and the decree of termination is affirmed.

Mack Kidd, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:   June 21, 2002

Do Not Publish