11th
Court of Appeals

                                                                  Eastland,
Texas

                                                             Memorandum
Opinion

 

In the
Interest of M.L.L. and R.J.L., children

No.  11-04-00294-CV --
Appeal from Comanche County

 

John A. Labrado, Jr. appeals from the trial court=s order terminating his parental rights
to his two children, M.L.L. and R.J.L.[1]  We affirm.

In his sole issue on appeal, Labrado argues that
the evidence is both legally and factually insufficient to support the trial
court=s order
of termination.  We review these
propositions under a heightened standard. 
In our review of a legal insufficiency claim, we will examine all of the
evidence in the light most favorable to the finding and determine whether a
reasonable trier of fact could have formed a firm belief or conviction that its
finding was true.   In re J.F.C.,
96 S.W.3d 256, 266 (Tex.2002); Phillips v. Texas Department of Protective
and Regulatory Services, 149 S.W.3d 814 (Tex.App. - Eastland 2004, no pet=n). 
We must assume that the fact finder resolved disputed facts in favor of
its finding.  In re J.F.C., supra.  In a factual sufficiency review, we will give
due consideration to evidence that the fact finder could reasonably have found
to be clear and convincing.   In re
C.H., 89 S.W.3d 17, 25 (Tex.2002); Phillips v. Texas Department of
Protective and Regulatory Services, supra. 
We determine whether the evidence is such that a fact finder could
reasonably form a firm belief or conviction about the truth of the State=s allegations.  In re C.H., supra.  We also consider whether any disputed
evidence is such that a reasonable fact finder could not have resolved that
disputed evidence in favor of its finding. 
In re J.F.C., supra at 266.

In its order, the trial court found by clear and
convincing evidence that Labrado had:

[K]nowingly
placed or knowingly allowed the children to remain in conditions or
surroundings which endanger the physical or emotional well-being of the
children;[2]

 








[E]ngaged
in conduct or knowingly placed the children with persons who engaged in conduct
which endangers the physical or emotional well-being of the children;[3]

 

[F]ailed
to comply with the provisions of a court order that specifically established
the actions necessary for the father to obtain the return of the children who
have been in the permanent or temporary managing conservatorship of the
Department of Family and Protective Services for not less than nine months as a
result of the children=s
removal from the parent.[4]


 

The trial court further found that termination of Labrado=s parental rights was in the best
interest of the children.[5]

 AEndanger@
means more than a threat of metaphysical injury or a less than ideal
environment, but the conduct need not actually injure the child nor be directed
at the child.  Phillips v. Texas
Department of Protective and Regulatory Services, supra. AEndanger@
means Ato expose
to loss or injury; to jeopardize.@  Texas Department of Human Services v. Boyd,
727 S.W.2d 531, 533 (Tex.1987).  The
Texas Department of Protective and Regulatory Services (Department) need not
establish the specific danger to the child=s
well‑being as an independent proposition; the danger may be inferred from
parental misconduct.  In the Interest
of J.J., 911 S.W.2d 437, 440 (Tex.App. ‑ Texarkana 1995, writ den=d). 
We will examine the record and determine, in accordance with the
standards set out above, whether the Department met its burden of proof.

 On June 23,
2003, M.L.L. and R.J.L. were removed from the home owned by Labrado=s father, due to neglect, lack of
supervision, risk of physical abuse, and the dangerous and unsanitary conditions
in which they were living.  M.L.L. and
R.J.L. resided at the home with Labrado and Labrado=s
father and stepmother.








Labrado was referred to counseling with William
Thomas Gustavus on August 12, 2003. Labrado did not begin attending the
sessions until April 26, 2004.  Labrado
attended five sessions from April 26, 2004, until June 14, 2004.  Labrado did not attend any further sessions
until October 2004.  Gustavus testified
at the termination hearing that Labrado has no capacity to successfully parent
any child.  Gustavus stated that,
although Labrado had developed an awareness of his anger problems, it would
take months or years before his behavior was modified.  Gustavus stated that the children would be at
a Aconsiderable risk@ if returned to Labrado.

Melodee Huggins, a licensed professional
counselor, testified that she counseled M.L.L. and R.J.L.  Huggins stated that R.J.L. was hyperactive
and difficult to control.  R.J.L. hit,
cursed, threatened to Acut@ people, and threatened to burn down
people=s
houses.  R.J.L. told Huggins that Labrado
licked R.J.L.=s Abutt@
and Apeepee.@ 
Huggins stated that Labrado was unable to handle R.J.L.=s behavioral problems.

Huggins further testified that M.L.L. reported
that Labrado put baby food on her genitals and Alicked@ it off.  M.L.L. also told Huggins that Labrado made
M.L.L. lick baby food off of Labrado=s
Abottom.@  M.L.L. further told Huggins that her
grandfather, who lived in the home with the children, inserted a spoon in her Afront@
and Aback@ and then made M.L.L. pull out the
spoon.  Huggins testified that it would
endanger the children to return them to Labrado and that termination of Labrado=s parental rights was in the best
interest of the children.

There was evidence presented that Labrado was
arrested on three charges of indecency with a child involving other family
members.  These charges were subsequently
dropped.  At the time of termination,
Labrado was on community supervision for brandishing a knife in a store.  The record also shows that Adult Protective
Services was called to the Labrado home to investigate Labrado=s abuse of his father.

Labrado testified at the hearing and admitted
arguing with his father.  Labrado said
that he hit the walls on various occasions when he was angry and left holes in
the walls of the home.  Labrado said that
he had hit the wall with his fist and left a hole when he was angry with
R.J.L.  Labrado admitted to spanking
M.L.L. and R.J.L. with a belt, which left bruises on M.L.L. on one
occasion.  Labrado testified that, when
he was a child, his father spanked him until he could not sit down for a day or
two.  Labrado acknowledged that he might
have pushed R.J.L. on occasion.








Labrado testified that the home where he currently
resides with his father and stepmother 
is more appropriate for raising children than the house where they were
residing when the children were removed. 
However, Labrado stated that the house does not have gas to provide heat
or hot water for bathing.  Labrado
acknowledged that the house is not suitable for the children without having
gas.  Labrado further acknowledged that
he would need to provide beds and other furniture for the children before they
came to live in the house.  Labrado
denied sexually abusing the children and stated that he would no longer spank
them.  Labrado testified that he attended
parenting classes and that he has worked on his problems with anger.

Without question, sexual abuse is conduct that
endangers a child=s
physical or emotional well‑being. In re L.C., 145 S.W.3d 790, 796
(Tex.App. ‑ Texarkana 2004, no pet=n).
There was evidence that both Labrado and his father sexually abused the
children.  There was also evidence that
Labrado was physically abusive to both the children and his father.  Additionally, there was evidence presented
that the house where Labrado resides is not a suitable environment for the
children.  Although Labrado had made
attempts to comply with the Family Service Plan, there was evidence presented
that he continued to be a danger to the children. We find that the evidence is
both legally and factually sufficient to support the trial court=s finding that Labrado  knowingly placed or allowed the children to
remain in conditions or surroundings that endangered the physical and emotional
well-being of the children and that he engaged in conduct or knowingly placed
the children with persons who engaged in conduct which endangered their
physical or emotional well-being.  We
also find that the evidence supports the trial court=s
finding that termination is in the best interest of the children.  Only one statutory ground is required to
support a judgment of termination when there is also a finding that termination
is in the best interest of the child.  In
re A.V., 113 S.W.3d 355, 362 (Tex.2003). 
Labrado=s sole
issue on appeal is overruled.

The judgment of the trial court is affirmed.

 

PER CURIAM

 

July 14, 2005

Not designated for publication. 
See TEX.R.APP.P. 47.2(a).

Panel
consists of:  Arnot, C.J., and

Wright,
J., and McCall, J.











[1]The mother of the children voluntarily relinquished her
parental rights. 





[2]TEX. FAM. CODE ANN. '
161.001(1)(D) (Vernon 2002).





[3]TEX. FAM. CODE ANN. '
161.001(1)(E) (Vernon 2002).





[4]TEX. FAM. CODE. ANN. '
161.001(1)(O) (Vernon 2002).





[5]TEX. FAM. CODE. ANN. '
161.001(2) (Vernon 2002).