NO. 12-04-00264-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS

§APPEAL FROM THE 173RD

IN THE INTEREST OF A.C., J.L.M.,              §     JUDICIAL DISTRICT COURT OF
AND M.W.M., MINOR CHILDREN
§HENDERSON COUNTY, TEXAS 




MEMORANDUM OPINION
            Shelley Miller appeals the termination of her parental rights. In four issues, Shelley
challenges the order of termination. We affirm.

Background
            Shelley and Jesse Miller are the parents of J.L.M., born March 7, 2000, and M.W.M, born
April 16, 2002. In an affidavit, Leisa Jobe, a specialist with the Texas Department of Protective and
Regulatory Services (the “Department”), stated that the Department’s Kaufman County office
received a report on January 14, 2003 alleging neglectful supervision and physical neglect of J.L.M.
and M.W.M. by both parents. The conclusion was “reason to believe” based on information received
during the investigation. According to Jobe, on January 17, the parents voluntarily placed J.L.M.
and M.W.M. with Judy McGaugh, the children’s parental grandmother, to avoid having the children 
placed in foster care. However, on May 15, McGaugh brought the children to the Department’s
Athens office, stating that she could no longer care for the children because she had conflicts with
the parents, received no financial support from the parents, and was unable to receive food stamps
for the children. Therefore, according to Jobe, an emergency removal of the children was necessary.
McGaugh’s affidavit attached to Jobe’s confirmed her reasons for bringing the children to the
Department. She also stated that she was being harassed by the parents, that the children led to the
breakup of her marriage, and that the parents threatened her that if they “got their hands on the
children they would disapear [sic] with them and I would never see them again.” 
            On May 16, the Department filed an original petition for protection of a child, for
conservatorship, and for termination of the parent-child relationship between both parents and both
children.


 Thereafter, on May 29, the trial court entered an agreed temporary order following an
adversary hearing. Both parents appeared at the hearing. The Department was appointed temporary
managing conservator of the children, and both parents were appointed temporary possessory
conservators. The trial court specifically found and so notified the parents “that each of the actions
required of them below are necessary to obtain the return of the children, and failure to fully comply
with these orders may result in the restriction or termination of parental rights.” Both parents were
ordered to attend and cooperate fully in counseling sessions; attend, participate in, and successfully
complete parenting classes; and submit to and cooperate fully in the preparation of a court-ordered
drug and alcohol dependency assessment. Additionally, both parents were ordered to comply with
each requirement set out in the Department’s original, or any amended, service plan during the
pendency of the suit.
             In addition to the tasks ordered by the court, the family service plan required that Shelley
locate and maintain safe, appropriate housing for six to twelve months, obtain or maintain gainful
employment for six to twelve months, participate in individual counseling, submit to random
urinalyses and/or hair follicle tests, participate in a psychological evaluation, and cooperate with the
Department by contacting the social worker each week and providing genetic, family, and social
information. According to a permanency plan and permanency progress report from the Department
filed with the court, Shelley did not complete parenting classes, attend individual counseling,
participate in a drug assessment, or maintain appropriate housing. The Department reported that
Shelley provided family and genetic information, claimed to be working but did not provide
documentation to support her claim, and submitted to one urinalysis that was positive for
amphetamines.
            A jury trial began on July 6, 2004. Jesse did not appear at trial, although he was
represented by counsel. The jury found the parent-child relationship between Shelley and the
children should be terminated. On August 3, 2004, the trial court found by clear and convincing
evidence that Shelley had knowingly placed or knowingly allowed the children to remain in
conditions or surroundings which endangered the physical or emotional well-being of the children
and that she had engaged in conduct or knowingly placed the children with persons who engaged
in conduct which endangered the physical or emotional well-being of the children. The trial court
also found that Shelley failed to comply with the provisions of a court order that specifically
established the actions necessary for the parent to obtain the return of the children who had been
in the permanent or temporary managing conservatorship of the Department for not less than nine
months as a result of the children’s removal from the parent under Family Code Chapter 262 for
the abuse or neglect of the children. Finally, the trial court found by clear and convincing evidence
that termination of the parent-child relationship between Shelley and J.L.M. and M.W.M. was in
the children’s best interest. Therefore, the trial court ordered termination.


 This appeal followed.
 
Termination of Parental Rights
    Involuntary termination of parental rights embodies fundamental constitutional rights. Vela v.
Marywood, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), pet. denied per curiam, 53 S.W.3d 684
(Tex. 2001); In re J.J., 911 S.W.2d 437, 439 (Tex. App.–Texarkana 1995, writ denied). A
termination decree is “complete, final, irrevocable [and] divests for all time the parent and child
of all legal rights, privileges, duties, and powers with respect to each other except for the child’s
right to inherit.” Wiley v. Spratlan, 543 S.W.2d 349, 352 (Tex. 1976); In re Shaw, 966 S.W.2d
174, 179 (Tex. App.–El Paso 1998, no pet.). Because a termination action “permanently sunders”
the bonds between a parent and child, the proceedings must be strictly scrutinized. Wiley, 543
S.W.2d at 352; In re Shaw, 966 S.W.2d at 179. However, parental rights are not absolute, and it
is vital that the emotional and physical interests of the child not be sacrificed at the expense of
preserving that right. In re C.H., 89 S.W.3d 17, 26 (Tex. 2002).
            Section 161.001 of the Family Code permits a court to order termination of parental rights
if two elements are established. Tex. Fam. Code Ann. § 161.001 (Vernon 2002); In re J.M.T.,
39 S.W.3d 234, 237 (Tex. App.–Waco 1999, no pet.). First, the parent must have engaged in any
one of the acts or omissions itemized in the first subsection of the statute. Tex. Fam. Code Ann.
§ 161.001(1) (Vernon 2002); Green v. Texas Dep’t of Protective & Regulatory Servs., 25 S.W.3d
213, 219 (Tex. App.–El Paso 2000, no pet.); In re J.M.T., 39 S.W.3d at 237. Second, termination
must be in the best interest of the child. Tex. Fam. Code Ann. § 161.001(2) (Vernon 2002); In
re J.M.T., 39 S.W.3d at 237. Additionally, both elements must be established by clear and
convincing evidence, and proof of one element does not alleviate the petitioner’s burden of proving
the other. Tex. Fam. Code Ann. § 161.001; Wiley, 543 S.W.2d at 351; In re J.M.T., 39 S.W.3d
at 237. 
            Due process requires a petitioner to justify termination by clear and convincing evidence
because termination is such a drastic remedy. In re J.M.T., 39 S.W.3d at 237. The clear and
convincing standard for termination of parental rights is both constitutionally and statutorily
mandated. Tex. Fam. Code Ann. § 161.001; In re J.J., 911 S.W.2d at 439. Clear and convincing
evidence means “the measure or degree of proof that will produce in the mind of the trier of fact
a firm belief or conviction as to the truth of the allegations sought to be established.” Tex. Fam.
Code Ann. § 101.007 (Vernon 2002). There is a strong presumption that the best interest of the
child is served by preserving the parent-child relationship. Wiley, 543 S.W.2d at 352; In re
J.M.T., 39 S.W.3d at 240. Thus, the burden of proof is upon the person seeking to terminate. In
re J.M.T., 39 S.W.3d at 240.
 
Standard of Review
            When confronted by both a legal and a factual sufficiency challenge, an appellate court
must first review the legal sufficiency of the evidence. Glover v. Texas Gen. Indem. Co., 619
S.W.2d 400, 401 (Tex. 1981); In re M.D.S., 1 S.W.3d 190, 197 (Tex. App.–Amarillo 1999, no
pet.). Because termination findings must be based on clear and convincing evidence, the standard
of review is not the same on appeal as a finding based upon a preponderance of the evidence. In
re J.F.C., 96 S.W.3d 256, 264 (Tex. 2002). Therefore, in conducting a legal sufficiency review,
we must look at all the evidence in the light most favorable to the finding to determine whether
a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. 
Id. at 266. We must assume that the fact finder settled disputed facts in favor of its finding if a
reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could
have disbelieved or found incredible. Id. This does not mean that we are required to ignore all
evidence not supporting the finding because that might bias a clear and convincing analysis. Id.
            The appropriate standard for reviewing a factual sufficiency challenge to the termination
findings is whether the evidence is such that a fact finder could reasonably form a firm belief or
conviction about the truth of the petitioner’s allegations. In re C.H., 89 S.W.3d at 25. In
determining whether the fact finder has met this standard, an appellate court considers all the
evidence in the record, both that in support of and contrary to the trial court’s findings. Id. at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable
fact finder could not have reconciled that disputed evidence in favor of its finding. In re J.F.C.,
96 S.W.3d at 266. 
            This standard retains the deference an appellate court must have for the fact finder’s role. 
In re C.H., 89 S.W.3d at 26. Additionally, the trier of fact is the exclusive judge of the credibility
of the witnesses and the weight to be given their testimony. Nordstrom v. Nordstrom, 965 S.W.2d
575, 580 (Tex. App.–Houston [1st Dist.] 1997, pet. denied). Thus, our review must not be so
rigorous that only fact findings established beyond a reasonable doubt could withstand review. In
re C.H., 89 S.W.3d at 26.
 
Termination Under Sction 161.001(1)(O)
            In her third issue, Shelley contends that the evidence is legally and factually insufficient
to support a finding that she failed to comply with the provisions of a court order that specifically
established the actions necessary for her to obtain the return of the children.
Applicable Law and Analysis
            Section 161.001(1)(O) of the Texas Family Code states that the court may order
termination of the parent-child relationship if the court finds by clear and convincing evidence that
the parent has failed to comply with the provisions of a court order that specifically established the
actions necessary for the parent to obtain the return of the child who had been in the permanent or
temporary managing conservatorship of the Department for not less than nine months as a result
of the child’s removal from the parent under Family Code Chapter 262 for the abuse or neglect of
the child. Tex. Fam. Code Ann. §161.001(1)(O) (Vernon 2002). 
            It is undisputed that the Department had temporary managing conservatorship of both
children since May 29, 2003. Additionally, when the trial court granted the Department’s original
petition, it did so, at least in part, on the basis of Jobe’s affidavit. According to Jobe, the
Department concluded that there was “reason to believe” a report alleging neglectful supervision
and physical neglect of both children by the parents. Shelley denied that the Department had ever
removed her children from her or that she was alleged to have abused or neglected the children
even though Jobe stated that Shelley placed the children with McGaugh in lieu of having them
placed in foster care. Further, Jobe testified at trial that when McGaugh brought the children to
the Department, she (Jobe) believed the children were endangered or at risk because of alleged
drug use and the lack of appropriate housing. This evidence establishes that J.L.M. and M.W.M.
were removed as a result of Shelley’s neglect. 
            At trial, Shelley testified that she did not know the family service plan was court ordered. 
She admitted testifying at one point that although the court ordered her, she was not going to
comply with the service plan. Shelley did not believe that she should have to comply with the
family service plan because she did not have to do so when she had her children. She admitted not
submitting to a drug assessment or a psychological evaluation, not obtaining or maintaining a job
for six to twelve months, or participating in any counseling sessions. Shelley stated that she
provided a social and genetic history to the Department. Shelley also participated in one parenting
class and submitted to one urinalysis on May 31, 2003. She failed the urinalysis and did not
submit to any other drug test that was requested. 
            Shelley testified that she did maintain appropriate housing for six to twelve months,
although she admitted moving at least three times since coming to court for this case. Shelley
testified that no one helped her find suitable housing or financial assistance to get such housing. 
Shelley stated that her caseworker, LaToya Sanders, visited her present residence the week before
trial. She had lived in that residence off and on since April 2004. Her present residence was a
three bedroom mobile home with a fenced yard on one acre of land. According to Shelley, Sanders
commented that the residence was “real nice” and child safe. As part of the permanency plan,
Shelley understood that she had to accept responsibility for her part in the abuse and neglect of the
children, but refused to do so. Shelley testified that she was willing to participate in services at
first, but had no transportation. Later, however, she believed that she did not need the services. 
            LaToya Sanders, employed by the Department in Henderson County, became involved in
this case after the fourteen day hearing. At that hearing, Sanders admitted that Shelley was not
represented by counsel and that she did not provide Shelley with a copy of the agreed temporary
order. Sanders prepared a family service plan for Shelley that was filed with the court, and she was
ordered by the court to comply with the plan. The Department paid for these services. According
to Sanders, Shelley stated that she was not willing to participate in the services and that “right now
her life just wasn’t right.” According to Sanders, Shelley did not submit to a drug assessment or
a psychological evaluation. Although she reported working once, she never provided Sanders with
documentation of her work. Shelley never attended parenting classes. Although Shelley stated that
transportation was a problem, Sanders testified that she offered Shelley transportation to some of
the services. Shelley submitted to one urinalysis, but refused all other requests. Shelley did not
maintain weekly contact with the Department because she never had a telephone and moved
frequently.
            Shelley did not maintain safe and appropriate housing because she moved at least four
times between May 2003 and the time of trial. Sanders visited two of Shelley’s residences and
opined that neither were appropriate for small children. The first, a two bedroom mobile home,
had safety hazards in the front yard and an insecure front porch. The children’s bedroom lacked
beds. Sanders visited Shelley at a residence in Gun Barrel City in June 2004. The residence was
a three bedroom mobile home with portions of the front yard fenced. The underpinning in the front
was falling out, but the living room was “nice.” The residence had beds, electricity, bathroom
facilities, and kitchen facilities. However, according to Sanders, the home had safety issues. 
Sanders admitted that the Department offered no financial assistance to Shelley in order to obtain
housing.
            According to Sanders, Shelley’s service plan ordered her to admit, in counseling, her
responsibility for the children being in care. According to the permanency plan and permanency
progress report filed with the court, Shelley was asked to “discuss issues of abuse and neglect” and
“accept responsibility for her part in the abuse of” the children. However, Sanders admitted that
if abuse or neglect never occurred, Shelley would not have to admit to her responsibility for such
abuse or neglect. Sanders denied using Shelley’s refusal to admit to the abuse or neglect of her
children as a ground for noncompliance with the family service plan.
            Viewing the evidence in the light most favorable to the finding, a reasonable fact finder
could have concluded that Shelley completely failed to maintain safe, appropriate housing for six
to twelve months, obtain gainful employment, participate in individual counseling, participate in
a psychological evaluation, cooperate with the Department, complete parenting classes, and submit
to all requested urinalyses. Therefore, we conclude that the evidence, viewed in the light most
favorable to the finding, was sufficiently clear and convincing that a reasonable trier of fact could
have formed a firm belief or conviction that Shelley “failed to comply with the provisions of a
court order that specifically established the actions necessary for [her] to obtain the return of the
child[ren] who had been in the permanent or temporary managing conservatorship of the
Department for not less than nine months as a result of the child[ren]’s removal from the parent
under Chapter 262 for the abuse or neglect of the children.” See Tex. Fam. Code Ann.
§ 161.001(1)(O).
            Although there is conflicting evidence that Shelley maintained appropriate housing, the jury
could have found that Shelley moved frequently and failed to maintain appropriate housing for six
to twelve months. Although there is some disputed evidence, this evidence is not so significant
that a reasonable trier of fact could not have reconciled this evidence in favor of its finding and
formed a firm belief or conviction that Shelley “failed to comply with the provisions of a court
order that specifically established the actions necessary for [her] to obtain the return of the
child[ren] who had been in the permanent or temporary managing conservatorship of the
Department for not less than nine months as a result of the child[ren]’s removal from the parent
under Chapter 262 for the abuse or neglect of the children.” See Tex. Fam. Code Ann.
§ 161.001(1)(O). Accordingly, Shelley’s third issue is overruled.



 
Best Interest of the Child
            We now turn to the trial court’s finding that termination is in the best interest of the
children. In her fourth issue, Shelley argues that there was not clear and convincing evidence that
it was in the children’s best interest for her parental rights to be terminated. An appellant’s brief
must contain a clear and concise argument for the contentions made, with appropriate citations to
authorities and to the record. Tex. R. App. P. 38.1(h). However, Shelley’s brief contains no
citations to authorities and no argument regarding the best interests of the children. Therefore,
Shelley has waived this issue. See Tex. R. App. P. 38.1(h). Accordingly, Shelley’s fourth issue is
overruled.
 
Disposition
            Having overruled the issues presented by Shelley in this appeal, the judgment of the trial
court is affirmed.
 
                                                                                                     JAMES T. WORTHEN 
                                                                                                                 Chief Justice
 
 
Opinion delivered September 30, 2005.
Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
(PUBLISH)