NO. 12-02-00081-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS


 


§
 APPEAL FROM THE 8TH



IN THE INTEREST OF S.Z.G.,
§
 JUDICIAL DISTRICT COURT OF

A CHILD


§
 HOPKINS COUNTY, TEXAS






MEMORANDUM OPINION


 Chaka Kelly ("Kelly") appeals the termination of her parental rights. In two issues, Kelly
argues the trial court erred by finding that she engaged in conduct that endangered the physical or
emotional well-being of the child and that termination was in the best interest of the child. We
reverse and render.


Background


 On March 30, 1999, Kelly pleaded guilty to robbery. She was sentenced to imprisonment
for ten years, which was probated. As a condition of her probation, Kelly was required to attend a
Safe P Facility program ("SAFPF"). After completing the SAFPF program, Kelly was released to
a half-way house, the Salvation Army center in Dallas. During her stay at the Salvation Army, she
met Anthony Galloway ("Galloway"). Kelly left the half-way house without permission, violating
her probation, to live with Galloway in Mesquite. Further, Kelly became pregnant during her
relationship with Galloway.

 In November of 2000, Kelly's probation was revoked. The motion to revoke included
allegations that Kelly violated her probation by failing to report, failing to pay fees, fines, and costs,
failing to report her change of address, failing to perform community service, failing to participate
in a drug and alcohol abuse treatment plan, and failing to abide by the rules of the treatment facility
until discharged. After revocation, Kelly was sentenced to one hundred days of imprisonment. (1) At
the time of her sentencing, Kelly was aware that she was pregnant.

 On February 8, 2001, Kelly gave birth to a baby girl, S.Z.G., at the University of Texas
Medical Branch in Galveston, Texas while incarcerated in Galveston. After the birth, Kelly returned
to prison. She attempted to make arrangements through the social worker for her mother, sister, or
the child's father to pick up the baby at the hospital. However, her mother and sister had
transportation problems, and the father, Galloway, refused to pick up the child because he did not
believe that he was the father. 

 On February 11, 2001, Machel Ellis ("Ellis"), who was employed by the Texas Department
of Protective and Regulatory Services (the "Department") in Hopkins County, Texas, received a
report alleging neglectful supervision of S.Z.G. The report stated that the baby was ready to be
discharged from the hospital, but no family members had arrived to pick her up. Ellis attempted to
contact family members to pick up the child, but her efforts were unsuccessful. Ellis admitted that
Kelly was very upset that her family failed to pick up the child. The Department filed a petition for
protection of a child, for conservatorship, and for termination of Kelly and Galloway's parental rights
on February 20, 2001. The child was removed from the hospital by the Department on the following
day and placed in a foster home. At that time, the child was healthy, not addicted to drugs, and had
not been subjected to abuse or neglect. 

 On February 22, 2001, Kelly was released from prison on shock probation. On that same
day, Ellis met with Kelly and Kelly's probation officer, Corey Hale ("Hale"), and together reviewed
Kelly's probation plan. Hale told Kelly that she had to fulfill every condition of her probation or she
could go back to prison. The Department's service plan for reunification with S.Z.G. included
psychological evaluations, counseling, and parenting classes. 

 While on shock probation, Kelly was employed at a nursing home and a fast-food restaurant.
She had supervised visits with S.Z.G. in March and April of 2001. At each visit, Ellis stated that
Kelly acted appropriately, was happy to see the child, and was concerned for her welfare. Shirley
Steber ("Steber"), a CASA volunteer, and Tammie Brown ("Brown"), a legal worker with the
Department, testified that, during supervised visits with S.Z.G., Kelly acted appropriately toward the
child. Brown never saw Kelly engage in conduct that placed the child in danger. Moreover, Brown
had no personal knowledge of Kelly engaging in any criminal activity. However, at a hearing on
March 2, 2001, Brown recalled that the judge advised Kelly that she must stay out of jail to keep her
child. Likewise, Steber also recalled the judge warning Kelly about the consequences of going back
to prison.

 On or about April 6, 2001, the Department placed S.Z.G. with Lonice Williams ("Williams"). 
A condition of the placement was that Kelly, who was living with Williams, would not have
unsupervised contact with the child. However, no safety plan was completed restricting Williams
from allowing the child to go anywhere unsupervised or from allowing the child to see her father,
Galloway. Approximately one week later, Ellis discovered that S.Z.G. was not with Williams, but,
instead, was with Galloway. At the time, the Department did not know of Galloway's location.
According to Kelly, she allowed Galloway to take the child for a visit. When the Department located
S.Z.G., she was sick, coughing, heavily congested, and suffering from upper respiratory problems.
Ellis transported S.Z.G. back to Hopkins County. While they were en route, S.Z.G. began aspirating
on the milk in her bottle, necessitating a visit to a hospital emergency room. The child was returned
to the custody of the Department, removed from Williams' care, and placed back with the original
foster home. Kelly was allowed weekly supervised visitation. 

 Kelly completed the psychological evaluation and was in the process of starting parenting
classes, but never actually completed them. Kelly did meet with a counselor on one occasion.
Dwayne Cox ("Cox"), a licensed chemical dependency counselor, administered a chemical
dependency assessment on Kelly. According to Cox, Kelly was, and is, chemically dependent in
early remission. Kelly's urine drug screen was clear. 

 On May 29, 2001, Kelly's probation was again revoked. Kelly pleaded true to the
allegations, which included failing to obtain prior approval before changing her residence, failing
to pay probation fees, fines, court costs, and restitution, failing to report a change in her employment,
failing to perform community service, and failing to enroll in a drug and alcohol abuse treatment
program within the specified time. Kelly was sentenced to two years of imprisonment and assessed
a fine of $1,500. Because she was incarcerated, Kelly was unable to comply with the Department's
service plan. Since she has been in jail, Kelly has written Ellis and Brown requesting pictures and
inquiring about the welfare of the child.

 On January 8, 2002, the termination proceeding was tried before the court. At trial, Ellis
testified that, in her opinion, Kelly knowingly engaged in conduct endangering the physical and
emotional well-being of her child by being placed back in jail. Further, allowing the child to see her
father placed S.Z.G. in danger because the Department was not "aware of" the child's father at that
time. Later, however, the Department gave Galloway unsupervised, weekend visitation with the
child. Ellis also believes that it is in the best interest of the child for Kelly's parental rights to be
terminated. Steber testified that CASA's initial recommendation was reunification. However,
because of Kelly's incarceration, CASA supports S.Z.G.'s remaining in foster care and being placed
for adoption. In Steber's opinion, it is in the best interest of the child that Kelly not be given custody
because she cannot provide a home and support. Nonetheless, but for Kelly's incarceration, Steber
would be in favor of reunification. 

 Brown testified that it would not be in the best interest for the child to be returned to Kelly
because, due to her incarceration, she cannot provide the basic necessities such as food, clothing, and
shelter. In Brown's opinion, Kelly's probation violations were detrimental to S.Z.G.'s emotional
and physical well-being because they removed her ability to parent and to provide a safe place for
the child. However, Brown admitted that, but for Kelly's incarceration, it is possible the child would
have been reunited with Kelly. 

 At the conclusion of the trial, the court found, by clear and convincing evidence, that Kelly
had engaged in conduct or knowingly placed the child with persons who engaged in conduct which
endangered the physical or emotional well-being of the child. Further, the court found by clear and
convincing evidence that termination of Kelly's parental rights is in the child's best interest. (2) The
court appointed the Department as permanent managing conservator of S.Z.G., finding the
appointment in the best interest of the child. 

 On March 27, 2002, the court entered its findings of fact and conclusions of law. The court
found that Kelly's parental rights were terminated pursuant to section 161.001(1)(E) of the Texas
Family Code, that termination was in the best interest of the child, and that each fact relating to
termination was supported by clear and convincing evidence. Further, the court stated, as a
conclusion of law, that the parent-child relationship between Kelly and S.Z.G. should be terminated.
This appeal followed.


Termination of Parental Rights

 Involuntary termination of parental rights embodies fundamental constitutional rights. Vela
v. Marywood, 17 S.W.3d 750, 759 (Tex. App.-Austin 2000), pet. denied per curiam, 53 S.W.3d 684
(Tex. 2001); In re J.J., 911 S.W.2d 437, 439 (Tex. App.-Texarkana 1995, writ denied). A
termination decree is "complete, final, irrevocable [and] divests for all time the parent and child of
all legal rights, privileges, duties, and powers with respect to each other except for the child's right
to inherit." Wiley v. Spratlan, 543 S.W.2d 349, 352 (Tex. 1976); In re Shaw, 966 S.W.2d 174, 179
(Tex. App.-El Paso 1998, no pet.) Thus, breaking the bonds between a parent and child "can never
be justified without the most solid and substantial reasons." Wiley, 543 S.W.2d at 352. Because a
termination action permanently sunders those bonds, the proceedings must be strictly scrutinized. 
Id.; In re Shaw, 966 S.W.2d at 179. However, parental rights are not absolute, and it is vital that
the emotional and physical interests of the child not be sacrificed at the expense of preserving those
rights. In re C.H., 89 S.W.3d 17, 26 (Tex. 2002).

 Section 161.001 of the Family Code permits a court to order termination of parental rights
if two elements are established. Tex. Fam. Code Ann. § 161.001 (Vernon 2002); In re J.M.T., 39
S.W.3d 234, 237 (Tex. App.-Waco 1999, no pet.), disapproved on other grounds, 96 S.W.3d 256,
267 & n.39 (Tex. 2002). First, the parent must have engaged in any one of the acts or omissions
itemized in the first subsection of the statute. Tex. Fam. Code Ann. § 161.001(1) (Vernon 2002);
Green v. Texas Dep't of Protective & Regulatory Servs., 25 S.W.3d 213, 219 (Tex. App.-El Paso
2000, no pet.); In re J.M.T., 39 S.W.3d at 237. Second, termination must be in the best interest of
the child. Tex. Fam. Code Ann. § 161.001(2) (Vernon 2002); In re J.M.T., 39 S.W.3d at 237. 
Additionally, both elements must be established by clear and convincing evidence, and proof of one
element does not alleviate the petitioner's burden of proving the other. Tex. Fam. Code Ann.
§161.001; Wiley, 543 S.W.2d at 351; In re J.M.T., 39 S.W.3d at 237. 

 Due process requires a petitioner to justify termination by clear and convincing evidence
because termination is such a drastic remedy. In re J.M.T., 39 S.W.3d at 237. The clear and
convincing standard for termination of parental rights is both constitutionally and statutorily
mandated. Tex. Fam. Code Ann. § 161.001; In re J.J., 911 S.W.2d at 439. Clear and convincing
evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a
firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code
Ann. § 101.007 (Vernon 2002). There is a strong presumption that the best interest of the child is
served by preserving the parent-child relationship. Wiley, 543 S.W.2d at 352; In re J.M.T., 39
S.W.3d at 240. Thus, the burden of proof is upon the person seeking to deprive the parent of their
parental rights. In re J.M.T., 39 S.W.3d at 240.


Standard of Review

 When confronted by both a legal and a factual sufficiency challenge, an appellate court must
first review the legal sufficiency of the evidence. Glover v. Texas Gen. Indem. Co., 619 S.W.2d
400, 401 (Tex. 1981); In re M.D.S., 1 S.W.3d 190, 197 (Tex. App.-Amarillo 1999, no pet.). 
Because termination findings must be based on clear and convincing evidence, the standard of
review is not the same on appeal as a finding based upon a preponderance of the evidence. In re
J.F.C., 96 S.W.3d 256, 264 (Tex. 2002). In reviewing the legal sufficiency of the evidence to
support termination findings, an appellate court should look at all the evidence in the light most
favorable to the finding to determine whether a reasonable trier of fact could have formed a firm
belief or conviction that its finding was true. Id. at 266. In order that proper deference is shown to
the fact finder's role, an appellate court must presume that the fact finder settled disputed facts in
favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable
fact finder could have disbelieved or found incredible. Id. However, a reviewing court is not
required to ignore all evidence not supporting the finding because that might bias a clear and
convincing analysis. Id.

 The appropriate standard for reviewing a factual sufficiency challenge to the termination
findings is whether the evidence is such that a fact finder could reasonably form a firm belief or
conviction about the truth of the petitioner's allegations. In re C.H., 89 S.W.3d at 25. In
determining whether the fact finder has met this standard, an appellate court considers all the
evidence in the record, both that in support of and contrary to the trial court's findings. Id. at 27-29.
Further, an appellate court should consider whether disputed evidence is such that a reasonable fact
finder could not have reconciled that disputed evidence in favor of its finding. In re J.F.C., 96
S.W.3d at 266. If the disputed evidence is so significant that a fact finder could not reasonably have
formed a firm belief or conviction, then the evidence is factually insufficient. Id. An appellate court
should specify its reasons for concluding that a reasonable trier of fact could not have attributed
disputed evidence in favor of the finding. Id. at 266-67.

 This standard retains the deference an appellate court must have for the fact finder's role. 
In re C.H., 89 S.W.3d at 26. Additionally, the trier of fact is the exclusive judge of the credibility
of the witnesses and the weight to be given their testimony. Nordstrom v. Nordstrom, 965 S.W.2d
575, 580 (Tex. App.-Houston [1st Dist.] 1997, pet. denied). Thus, our review must not be so
rigorous that only fact findings established beyond a reasonable doubt could withstand review. In
re C.H., 89 S.W.3d at 26. Further, a trial court's findings of fact are reviewable for legal and factual
sufficiency of the evidence by the same standards applied in reviewing evidence supporting a jury's
finding. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); In re V.R.W., 41 S.W.3d 183, 190
(Tex. App.-Houston [14th Dist.] 2001, no pet.), disapproved on other grounds, 96 S.W.3d 256, 267
n.39 (Tex. 2002).


Endangerment

 Kelly contends that the evidence is legally and factually insufficient to support the trial
court's finding that she engaged in conduct that endangered the physical or emotional well-being of
her child. The Department argues that Kelly's conduct led to her incarceration which, in turn,
endangered the physical and emotional well-being of the child. 

Applicable Law

 Section 161.001(1)(E) of the Texas Family Code states that the court may order termination
of the parent-child relationship if the court finds by clear and convincing evidence that the parent has
engaged in conduct or knowingly placed the child with persons who engaged in conduct which
endangers the physical or emotional well-being of the child. Tex. Fam. Code Ann. § 161.001(1)(E)
(Vernon 2002). "Endanger" means to expose to loss or injury or to jeopardize. Texas Dep't of
Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987); In re D.M., 58 S.W.3d 801, 811 (Tex.
App.-Fort Worth 2001, no pet.). Endanger means more than a threat of metaphysical injury or the
possible ill effects of a less-than-ideal family environment. Boyd, 727 S.W.2d at 533; In re D.M.,
58 S.W.3d at 811. Nonetheless, it is not necessary that the conduct be directed at the child or that
the child actually suffers injury. Boyd, 727 S.W.2d at 533; In re J.J., 911 S.W.2d at 440. Rather,
it is sufficient that the child's well-being is jeopardized or exposed to loss or injury. In re J.J., 911
S.W.2d at 440. 

 The specific danger to the child's well-being need not be established as an independent
proposition, but may instead be inferred from parental misconduct. Boyd, 727 S.W.2d at 533; In
re J.J., 911 S.W.2d at 440. Further, scienter is not required for an appellant's own acts under section
161.001(1)(E), although it is required when a parent places his child with others who engage in
endangering acts. In re U.P., 105 S.W.3d 222, 236 (Tex. App.-Houston [14th Dist.] 2003, pet.
filed). Finally, the need for permanence is a paramount consideration for the child's present and
future physical and emotional needs. In re N.K., 99 S.W.3d 295, 301 n.9 (Tex. App.-Texarkana
2003, no pet.); In re M.D.S., 1 S.W.3d at 200. 

 Subsection (E) requires us to look at the parent's conduct alone, including actions, omissions,
or the parent's failure to act. In re D.J., 100 S.W.3d 658, 662 (Tex. App.-Dallas 2003, pet. filed);
In re D.M., 58 S.W.3d at 811. It is inconsequential that the parental conduct occurred before the
child's birth. In re U.P., 105 S.W.3d at 229; In re D.M., 58 S.W.3d at 812. Instead, courts look to
what the parent did both before and after the child's birth to determine whether termination is
necessary. In re D.M., 58 S.W.3d at 812. Further, termination under subsection (E) must be based
on more than a single act or omission. In re D.M., 58 S.W.3d at 812; In re D.T., 34 S.W.3d 625,
634 (Tex. App.-Fort Worth 2000, pet. denied). A voluntary, deliberate, and conscious "course of
conduct" by the parent that endangers the child's physical and emotional well-being is required. In
re D.M., 58 S.W.3d at 812; In re D.T., 34 S.W.3d at 634.

 Imprisonment is a factor to be considered by the trial court on the issue of endangerment.
Boyd, 727 S.W.2d at 533; In re M.D.S., 1 S.W.3d at 199. Mere imprisonment, standing alone, will
not constitute engaging in conduct which endangers the emotional or physical well-being of a child.
Boyd, 727 S.W.2d at 533; In re D.M., 58 S.W.3d at 812; In re M.D.S., 1 S.W.3d at 199. A parent's
voluntary, willful, and conscious engagement in conduct that she knows may result in imprisonment
is also insufficient to support termination of parental rights. In re D.T., 34 S.W.3d at 636. Further,
the commission of any intentional act which results in imprisonment, including violation of
probation, is not sufficient grounds, standing alone, for termination. Mayfield v. Smith, 608 S.W.2d
767, 771 (Tex. Civ. App.-Tyler 1980, no writ). Such a test creates a danger that termination of
parental rights could become an additional punishment automatically imposed along with
imprisonment for almost any crime. In re D.T., 34 S.W.3d at 634. However, evidence of a parent's
imprisonment may contribute to a finding that the parent engaged in a course of conduct that
endangered the child's physical and emotional well-being. In re N.K., 99 S.W.3d at 300; In re J.J.,
911 S.W.2d at 440. If the evidence, including the imprisonment, shows a course of conduct which
has the effect of endangering the physical or emotional well-being of the child, a finding under
section 161.001(1)(E) is supportable. Boyd, 727 S.W.2d at 534; In re D.M., 58 S.W.3d at 812; In
re M.D.S., 1 S.W.3d at 199.

Analysis

 Kelly argues that she never had more than supervised visitation with her child, that her
probation revocation was based on technical violations, and that the Department had no reason to
remove the child but for Kelly's incarceration. The Department contends that Kelly was incapable
of providing a stable, secure, and safe home, that Kelly knowingly allowed another individual to take
the child out of Williams' home unsupervised, and that Kelly took affirmative steps to violate her
probation, placing her beyond the ability to parent her child. 

 We first review the legal sufficiency of the evidence. The evidence shows that Kelly pleaded
guilty to robbery and received a probated sentence. Subsequently, she violated the terms of her
probation, was aware that she was pregnant at the time, and was sentenced to a combination of
imprisonment and shock probation. After giving birth while in prison, Kelly was unable to make
arrangements for relatives to pick up the new baby, resulting in removal of the child by the
Department to a foster home. After her release pursuant to shock probation, she was allowed
visitation with her child. Kelly allowed Galloway to take the child for a visit that was, according to
Ellis, conduct which endangered the child. However, Galloway was later given weekend, overnight
visitation with the child. Later, Kelly's probation was revoked, she pleaded true to the allegations,
and she was sentenced to two years of imprisonment. Brown testified that Kelly was unable to
comply with the Department's service plan because she was incarcerated.

 Ellis testified that Kelly's conduct which endangered the physical and emotional health of
S.Z.G. was being placed back in jail and allowing the child to see the father. Cox testified that Kelly
was chemically dependent in early remission and that her urine drug screen was clear. Steber
testified that, but for Kelly's incarceration, she would favor reunification. Brown never witnessed
conduct or saw Kelly engage in conduct that placed the child in danger nor did she have personal
knowledge that Kelly engaged in any criminal activity. However, according to Brown, violating the
conditions of her probation were actions detrimental to the child's physical and emotional well-being. Nonetheless, Brown admitted that, but for Kelly's incarceration, the child may have been
reunited with Kelly. Ellis, Steber, and Brown testified that Kelly acted appropriately toward her
child. Further, Ellis and Brown stated that Kelly corresponded from prison, expressing concern and
requesting pictures of her child.

 The evidence supporting the finding does not show a voluntary, deliberate, and conscious
"course of conduct" by Kelly which endangered the physical or emotional well-being of the child
apart from imprisonment and violations of probation. See In re D.M., 58 S.W.3d at 812; In re D.T.,
34 S.W.3d at 634. Evidence that Kelly was imprisoned or committed an intentional act which
resulted in imprisonment, including violation of probation, is insufficient grounds, standing alone,
for termination. See In re D.T., 34 S.W.3d at 636; Mayfield, 608 S.W.2d at 771. Because
imprisonment, together with Kelly's deliberate acts resulting in violation of her probation, were the
only grounds for terminating her parental rights, the evidence is legally insufficient to support the
trial court's finding of termination based upon section 161.001(1)(E) of the Texas Family Code. 
Therefore, viewing the evidence in the light most favorable to the finding, we conclude that a
reasonable trier of fact could not have formed a firm belief or conviction that Kelly engaged in
conduct or knowingly placed the child with persons who engaged in conduct which endangered the
physical or emotional well-being of the child. Accordingly, Kelly's first issue is sustained.

 Having determined that the evidence is legally insufficient to support the finding, it is
unnecessary for us to address Kelly's arguments that the evidence is factually insufficient or that the
evidence is insufficient to support a finding that termination is in the best interest of the child.


Conclusion

 Based upon our review of the record, we conclude that the trial court erred in finding, by
clear and convincing evidence, that Kelly engaged in conduct or knowingly placed the child with
persons who engaged in conduct which endangered the physical or emotional well-being of the child. 
Accordingly, the order of the trial court is reversed and judgment is rendered that the petition to
terminate Kelly's parental rights is denied.


 JAMES T. WORTHEN 

 Chief Justice



Opinion delivered July 31, 2003.

Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.



















(PUBLISH)
1. The record is not clear as to which allegations were used to revoke her probation.
2. The court also terminated Galloway's parental rights. He does not appeal the order.