NO. 12-04-00350-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
§APPEAL FROM THE 
IN THE INTEREST
§COUNTY COURT AT LAW
OF M.B., A CHILD
§CHEROKEE COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Ron and Christina Bird appeal the termination of their parental rights. In five issues, Ron 
and Christina each challenge the order of termination. We affirm.
 
Background
            Ron and Christina are the parents of a son, M.B., born July 9, 2003. On December 17, 2003,
the Texas Department of Protective and Regulatory Services (the “Department”) received a report
from the Jacksonville Police Department. The police reported that Ron was arrested and charged
with possession of a prohibited weapon. Christina was arrested after being discovered with a crack
cocaine pipe. M.B. was placed with the paternal grandparents. On December 19, the Department
removed M.B. from his home.
            On December 22, 2003, the Department filed an original petition for protection of M.B., for
conservatorship, and for termination of Ron and Christina’s parental rights. Thereafter, on
December 29, the trial court entered a temporary order following an adversary hearing. The
Department was appointed temporary managing conservator of M.B., and both parents were
appointed temporary possessory conservators. Further, the trial court ordered that the parents have
limited access to and possession of the child. 
            The trial court found that “each of the actions required of [Ron and Christina] below are
necessary to obtain the return of the child, and failure to fully comply with these orders may result
in the restriction or termination of parental rights.” Both parents were ordered to comply with each
requirement of the Department’s original, or any amended, service plan during the pendency of the
suit. In addition to tasks ordered by the court, the January 13, 2004 family service plan required that
both parents seek a support system to help provide care for M.B.; participate in random urinalyses
and hair follicle testing; participate in a drug assessment; follow any and all recommendations of the
drug assessment; demonstrate their ability to lead a drug/alcohol free lifestyle; participate in a
parenting course; access and evaluate services offered by the community to assist in supporting the
family; obtain/maintain employment; participate in family and individual counseling; maintain
housing free of a Department history, criminal history, and drug/alcohol abuse; obtain/maintain
appropriate and safe housing; participate in homemaker services; follow through with any pending
criminal charges, probation, or parole terms; not be involved in any criminal activity; inform the
Department of any address changes; cooperate with all court orders and service plans; and provide
the Department with health, social, education, and genetic history. 
            According to the final permanency plan and permanency progress report from the Department
filed with the court on August 24, 2004, Christina had not complied with her service plan at all nor
was she participating in any other services. She also tested positive for cocaine in a February 2004
hair follicle test. Ron completed a psychological evaluation and attended counseling sessions
sporadically. Although Ron met the criteria for inpatient treatment, he had not taken the necessary
steps for such treatment. Moreover, Ron tested positive for cocaine in a February 2004 urinalysis
and hair follicle test. Ron was not participating in any other services. Neither parent complied with
any inpatient treatment programs even though the Department requested them to do so. Further,
neither parent attended a scheduled hair follicle drug test on August 3.
            A bench trial was conducted on October 21, 2004. At the conclusion, the trial court found,
by clear and convincing evidence, that Ron and Christina had engaged in one or more of the acts or
omissions necessary to support termination of their parental rights. The trial court also found, by
clear and convincing evidence, that termination of the parent-child relationship between Ron,
Christina, and M.B. was in the child’s best interest. Based on the above findings, the trial court
ordered termination of Ron’s and Christina’s parental rights. This appeal followed.
 
Termination of Parental Rights
            Involuntary termination of parental rights embodies fundamental constitutional rights. Vela
v. Marywood, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), pet. denied per curiam, 53 S.W.3d 684
(Tex. 2001); In re J.J., 911 S.W.2d 437, 439 (Tex. App.–Texarkana 1995, writ denied). A
termination decree is “complete, final, irrevocable [and] divests for all time the parent and child of
all legal rights, privileges, duties, and powers with respect to each other except for the child’s right
to inherit.” Wiley v. Spratlan, 543 S.W.2d 349, 352 (Tex. 1976); In re Shaw, 966 S.W.2d 174, 179
(Tex. App.–El Paso 1998, no pet.). Because a termination action “permanently sunders” the bonds
between a parent and child, the proceedings must be strictly scrutinized. Wiley, 543 S.W.2d at 352;
In re Shaw, 966 S.W.2d at 179. However, parental rights are not absolute, and it is vital that the
emotional and physical interests of the child not be sacrificed at the expense of preserving that right. 
In re C.H., 89 S.W.3d 17, 26 (Tex. 2002).
            Section 161.001 of the Family Code permits a court to order termination of parental rights
if two elements are established. Tex. Fam. Code Ann. § 161.001 (Vernon 2002); In re J.M.T., 39
S.W.3d 234, 237 (Tex. App.–Waco 1999, no pet.). First, the parent must have engaged in any one
of the acts or omissions itemized in the first subsection of the statute. Tex. Fam. Code Ann.
§ 161.001(1) (Vernon 2002); Green v. Texas Dep’t of Protective & Regulatory Servs., 25 S.W.3d
213, 219 (Tex. App.–El Paso 2000, no pet.); In re J.M.T., 39 S.W.3d at 237. Second, termination
must be in the best interest of the child. Tex. Fam. Code Ann. § 161.001(2) (Vernon 2002); In re
J.M.T., 39 S.W.3d at 237. Additionally, both elements must be established by clear and convincing
evidence, and proof of one element does not alleviate the petitioner’s burden of proving the other.
Tex. Fam. Code Ann. § 161.001; Wiley, 543 S.W.2d at 351; In re J.M.T., 39 S.W.3d at 237. 
            Due process requires a petitioner to justify termination by clear and convincing evidence
because termination is such a drastic remedy. In re J.M.T., 39 S.W.3d at 237. The clear and
convincing standard for termination of parental rights is both constitutionally and statutorily
mandated. Tex. Fam. Code Ann. § 161.001; In re J.J., 911 S.W.2d at 439. Clear and convincing
evidence means “the measure or degree of proof that will produce in the mind of the trier of fact a
firm belief or conviction as to the truth of the allegations sought to be established.” Tex. Fam. Code
Ann. § 101.007 (Vernon 2002). There is a strong presumption that the best interest of the child is
served by preserving the parent-child relationship. Wiley, 543 S.W.2d at 352; In re J.M.T., 39
S.W.3d at 240. Thus, the burden of proof is upon the person seeking to deprive the parent of their
parental rights. In re J.M.T., 39 S.W.3d at 240.
 
Standard of Review
            When confronted by both a legal and factual sufficiency challenge, an appellate court must
first review the legal sufficiency of the evidence. Glover v. Texas Gen. Indem. Co., 619 S.W.2d
400, 401 (Tex. 1981); In re M.D.S., 1 S.W.3d 190, 197 (Tex. App.–Amarillo 1999, no pet.). 
Because termination findings must be based on clear and convincing evidence, the standard of
review is not the same on appeal as a finding based upon a preponderance of the evidence. In re
J.F.C., 96 S.W.3d 256, 264 (Tex. 2002). Therefore, in conducting a legal sufficiency review, we
must look at all the evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction that its findings were true. Id.
at 266. We must assume that the fact finder settled disputed facts in favor of its finding if a
reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have
disbelieved or found incredible. Id. This does not mean that we are required to ignore all evidence
not supporting the finding because that might bias a clear and convincing analysis. Id.
            The appropriate standard for reviewing a factual sufficiency challenge to the termination
findings is whether the evidence is such that a fact finder could reasonably form a firm belief or
conviction about the truth of the petitioner’s allegations. In re C.H., 89 S.W.3d at 25. In
determining whether the fact finder has met this standard, an appellate court considers all the
evidence in the record, both that in support of and contrary to the trial court’s findings. Id. at 27-29. 
 Further, an appellate court should consider whether disputed evidence is such that a reasonable fact
finder could not have reconciled that disputed evidence in favor of its finding. In re J.F.C., 96
S.W.3d at 266. 
            This standard retains the deference an appellate court must have for the fact finder’s role. 
In re C.H., 89 S.W.3d at 26. Additionally, the trier of fact is the exclusive judge of the credibility
of the witnesses and the weight to be given their testimony. Nordstrom v. Nordstrom, 965 S.W.2d
575, 580 (Tex. App.–Houston [1st Dist.] 1997, pet. denied). Thus, our review must not be so
rigorous that only fact findings established beyond a reasonable doubt could withstand review. In
re C.H., 89 S.W.3d at 26.
 
Termination Under Section 161.001(1)(O)
            In their fourth issue, Ron and Christina contend that the evidence is legally and factually
insufficient to support the trial court’s finding that they failed to comply with the provisions of a
court order that specifically established the actions necessary for them to obtain the return of M.B.


 
Both argue that they were not allowed enough time to complete all of the service plan requirements.
Applicable Law and Analysis
            A court may order termination of the parent-child relationship if the court finds by clear and
convincing evidence that the parent has failed to comply with the provisions of a court order that
specifically established the actions necessary for the parent to obtain the return of a child who had
been in the permanent or temporary managing conservatorship of the Department for not less than
nine months as a result of the child’s removal from the parent under Chapter 262 for the abuse or
neglect of the child. Tex. Fam. Code Ann. § 161.001(1)(O) (Vernon 2002). 
            It is undisputed that the Department had temporary managing conservatorship of M.B. since
December 19, 2003. Additionally, when the trial court granted the Department’s original petition,
it did so, at least in part, on the basis of the affidavit of Charity Williamson, a Department employee. 
According to Williamson, the Department concluded that Ron and Christina engaged in ongoing
drug possession and use in violation of a previous service plan. Additionally, Williamson noted that
the original case was initiated because M.B. tested positive for cocaine and methadone at birth. This
evidence establishes that M.B. was removed as a result of Ron and Christina’s neglect.
Ron’s failure to comply with court order
            Amanda Prewitt, a Department employee, testified that Ron was ordered to comply with each
requirement in the Department’s original or any amended family service plan during the pendency
of this suit. The Department prepared a family service plan on January 13, 2004. Ron provided the
Department with the name of a relative with whom it could place M.B. Ron participated in random
urinalysis and hair follicle testing, a drug assessment, and a psychological evaluation. Ron was
employed off and on and attended two individual counseling sessions. Ron was required to attend
more counseling sessions, but the Department lost contact with him and the counseling service was
cancelled. In fact, the Department’s contact with Ron throughout the case was sporadic, and Prewitt
was frequently unable to reach Ron by telephone, letter, or personal visits. Moreover, Ron did not
remain drug free. According to Prewitt, Ron did not attend parenting classes, missed scheduled drug
tests, and did not seek treatment for drug issues.
            By August 23, the Department’s goal changed from family reunification to an unrelated
adoption due to Ron’s noncompliance with the family service plan. According to Prewitt, at the
sixty day status hearing, the trial court ordered that Ron was not allowed visitation until he passed
a urinalysis. If he failed a urinalysis, Ron was not allowed visitation with M.B. until a hair follicle
test was clean. In 2004, Ron had a hair follicle test and urinalysis on February 19, an oral fluids test
on April 29, and a hair follicle test on September 14. All tests were positive for cocaine. As of
September 14, Ron did not have a clean hair follicle test. According to Prewitt, Ron denied
continued drug use, but admitted using cocaine. In April, Ron stated that he was not using drugs
when he tested positive for cocaine. According to Prewitt, Ron knew that his drug issues were the
main problem.
            During the case, Prewitt testified that she sent at least three letters to Ron or his attorney
informing them of Ron’s failure to attend scheduled court ordered drug tests, failure to comply with
the service plan, and failure to remain drug free. In Prewitt’s opinion, Ron failed to comply with the
provisions of the court order establishing the actions necessary for him to obtain the return of child.
In her opinion, it is in M.B.’s best interest for Ron’s parental rights to be terminated. 
            Jerald Shore, a psychologist, testified that he performed a psychological evaluation of Ron
on February 26, 2004. Shore recommended that Ron be free of drugs before the Department
considered reunification with M.B. He recommended Ron be evaluated for drug treatment.
Additionally, Shore recommended that as long as Ron was not in treatment or not following a
monitoring regime, visits between Ron and M.B. should be withheld. Shore recommended
supervised visitations if Ron produced a certified clean drug test and had good hygiene. However,
Shore recommended the Department sever Ron’s parental rights with M.B. if Ron refused treatment
or could not produce a clean drug test for six months. After being informed that Ron had tested
positive for cocaine in February, April, and September 2004, Shore concluded that termination of
Ron’s parental rights was in M.B.’s best interest.
           Ron acknowledged that he understood the family service plan. Ron stated that he would do
whatever the Department asked to get his son back, including treatment. He testified that he
appeared at parenting classes, but was told to come back or that he arrived too late to participate. 
Ron stated that he could find employment and that he saw the psychologist. He admitted not
following through with pending criminal charges, although he “started to.” Ron went to counseling
twice, but explained that “things got so dysfunctional” he was unable to handle it. He admitted that
the service plan required him to be free of drugs and acknowledged that he tested positive for cocaine
in February, April, and September 2004. He stated that he complied with the service plan, but,
admittedly, not as much as he could. Ron testified that, given a little more time, he could handle the
obstacles in his way. He stated that, at first, the situation was confusing, overwhelming, and rushed.
Ron testified that he did not know how to deal with his family within the time allotted. However,
Ron testified that, given his allotted time and the extraordinary circumstances, it took him some time
to properly assess and deal with his problems. 
          Viewing the evidence in the light most favorable to the finding, a reasonable fact finder could
have concluded that Ron failed to demonstrate his ability to lead a drug free lifestyle because he
tested positive for cocaine on three separate occasions in 2004, failed to follow the recommendation
of the drug assessment, failed to attend all counseling sessions, failed to attend parenting classes, and
failed to submit to all requested drug testing. Therefore, we conclude that the evidence, viewed in
the light most favorable to the finding, was sufficiently clear and convincing that a reasonable trier
of fact could have formed a firm belief or conviction that Ron failed to comply with the provisions
of a court order that specifically established the actions necessary for him to obtain the return of a
child who had been in the permanent or temporary managing conservatorship of the Department for
not less than nine months as a result of the child’s removal from the parent under Chapter 262 for
the abuse or neglect of the child. See Tex. Fam. Code Ann. § 161.001(1)(O).
          Although there is conflicting evidence that Ron complied with the service plan in some ways
and that he could, given some more time, handle the obstacles, the trial court could have found that
Ron was given sufficient time to comply with the family service plan. Moreover, this evidence is
not so significant that a reasonable trier of fact could not have reconciled this evidence in favor of
its finding and formed a firm belief or conviction that Ron failed to comply with the provisions of
a court order that specifically established the actions necessary for him to obtain the return of a child
who had been in the permanent or temporary managing conservatorship of the Department for not
less than nine months as a result of the child’s removal from the parent under Chapter 262 for the
abuse or neglect of the child. See Tex. Fam. Code Ann. § 161.001(1)(O). Accordingly, Ron’s
fourth issue is overruled.



Christina’s failure to comply with court order
          Prewitt testified that Christina was ordered to comply with each requirement in the
Department’s original or any amended family service plan during the pendency of this suit. The
Department prepared a family service plan on January 13, 2004. Christina provided the Department
with the name of a relative with whom it could place M.B. and participated in urinalysis and hair
follicle testing and a drug assessment. However, Christina did not complete a court ordered
psychological evaluation and failed to comply with any of the other items on the family service plan,
including parenting classes. The Department’s contact with Christina throughout the case was
sporadic, and Prewitt was frequently unable to reach her by telephone, letter, or personal visits.
Prewitt stated that Christina was not present at the sixty day status hearing on February 2. Ron
reported that Christina was in drug rehabilitation in Longview, Texas. However, when Prewitt
contacted the drug rehabilitation facility on February 11, the facility had no record of Christina’s
being admitted into the program. According to Prewitt, Christina did not attend parenting classes,
missed scheduled drug tests, and did not seek treatment for drug issues.
          By August 23, the Department’s goal changed from family reunification to an unrelated
adoption due to Christina’s noncompliance with the family service plan. According to Prewitt, at
the sixty day status hearing, the trial court ordered that Christina was not allowed visitation until she
passed a urinalysis. If she failed a urinalysis, Christina was not allowed visitation with M.B. until
a hair follicle test was clean. According to Prewitt, Christina’s hair follicle tests were positive for
cocaine on February 19 and September 3, 2004. Although Christina denied using drugs since the
beginning of the case, records from Mother Frances Hospital in Tyler, Texas, revealed that M.B.’s
body fluids were positive for cocaine and methadone when he was born. In fact, both M.B. and
Christina were life-flighted to Methodist Hospital in Dallas the day after M.B. was born. M.B.’s
final diagnosis was drug withdrawal syndrome. Further, Methodist Hospital records showed that
Christina tested positive for opiates, i.e., methadone, cocaine, and hepatitis C antibody. Although
Prewitt and Christina discussed the fact that M.B. was born with cocaine in his system, Christina
denied using cocaine. According to Prewitt, Christina’s activities and lifestyle would intentionally
harm M.B. if he were returned to her. However, Prewitt admitted that she had no evidence that
Christina had physically abused M.B.
          During the case, Prewitt testified that she sent at least three letters to Christina or her attorney
informing them of Christina’s failure to comply with the service plan and failure to remain drug-free.
In one letter, Prewitt related a conversation during which she explained to Christina that she was not
seeing any progress. Instead, Christina had many excuses for her noncompliance with the court
orders. According to Prewitt, Christina understood the importance of the conversation because she
made a large scene in the Department’s office, “crying out and hollering that we were not going to
take her son away from her, that she was going to do what she needed to do to get him returned to
her.” In Prewitt’s opinion, Christina failed to comply with the provisions of the court order
establishing the actions necessary for her to obtain the return of child. In her opinion, it is in M.B.’s
best interest for Christina’s parental rights to be terminated. 
          Andretta White, a probation officer with the Cherokee County Community Corrections and
Supervision department, testified that she was Christina’s probation officer. She stated that Christina
failed to report for the months of February and March 2004. Additionally, Christina had not reported
since March 2004. According to White, Christina also failed to perform any community service. 
          Viewing the evidence in the light most favorable to the finding, a reasonable fact finder could
have concluded that Christina failed to demonstrate her ability to lead a drug free lifestyle because
she tested positive for cocaine on two separate occasions in 2004, failed to follow through with any
pending criminal charges, probation, and parole terms, failed to attend parenting classes, failed to
complete a psychological evaluation, and failed to submit to all requested drug testing. Therefore,
we conclude that the evidence, viewed in the light most favorable to the finding, was sufficiently
clear and convincing that a reasonable trier of fact could have formed a firm belief or conviction that
Christina failed to comply with the provisions of a court order that specifically established the
actions necessary for her to obtain the return of a child who had been in the permanent or temporary
managing conservatorship of the Department for not less than nine months as a result of the child’s
removal from the parent under Chapter 262 for the abuse or neglect of the child. See Tex. Fam.
Code Ann. § 161.001(1)(O).
          Although there is conflicting evidence that Christina participated in two drug tests and a drug
assessment, the trial court could have found that Christina was given sufficient time to comply with
the family service plan. Moreover, this evidence is not so significant that a reasonable trier of fact
could not have reconciled this evidence in favor of its finding and formed a firm belief or conviction
that Christina failed to comply with the provisions of a court order that specifically established the
actions necessary for her to obtain the return of a child who had been in the permanent or temporary
managing conservatorship of the Department for not less than nine months as a result of the child’s
removal from the parent under Chapter 262 for the abuse or neglect of the child. See Tex. Fam.
Code Ann. § 161.001(1)(O). Accordingly, Christina’s fourth issue is overruled.



 
Best Interest of the Child
          In their fifth issue, Ron and Christina each argue that there is not clear and convincing
evidence that termination is in the child’s best interest. 
Applicable Law
          In determining the best interest of the child, a number of factors have been considered,
including (1) the desires of the child; (2) the emotional and physical needs of the child now and in
the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental
abilities of the individuals seeking custody; (5) the programs available to assist these individuals;
(6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions
of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any
excuse for the acts or omissions of the parent. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.
1976).
          This list is not exhaustive, but simply indicates considerations that have been or could be
pertinent. Id. However, the best interest of the child does not require proof of any unique set of
factors nor limit proof to any specific factors. In re D.M., 58 S.W.3d 801, 814 (Tex. App.–Fort
Worth 2001, no pet.). The Holley test focuses on the best interest of the child, not the parent’s best
interest. Dupree v. Texas Dep’t of Protective & Regulatory Servs., 907 S.W.2d 81, 86 (Tex.
App.–Dallas 1995, no writ).
Analysis
          In addition to the evidence previously described, shortly after the first witness began testifying
at trial, Christina had to be removed from the courtroom because she was unable to remain quiet. 
In fact, Christina asked to be taken home, for her husband to take care of her, and for her medication.
She stated that she spent five years in a mental hospital, was schizophrenic, was unaware of what
she was doing, wanted her counselor, and was not able to testify. Regarding Christina’s behavior,
Shore opined that she was faking her behavior because, at brief moments, she “pull[ed] it together.”
He did not believe her behavior was psychotic.  
          Prewitt testified that on a couple of home visits, she observed Christina bend in half, rock
back and forth, and clench her chest. Prewitt stated that when Christina exhibited this behavior, she
had been informing Christina of the things she needed to do in order to get her child back. At that
point, Christina questioned why the Department removed M.B., began to rock, and declared that the
Department did not have the right to do so.
          Officer Eric Dawes, a patrolman with the Jacksonville Police Department, testified that, on
the night of December 17, 2003, he was on duty near a residence known for heavy drug sales. After
midnight, a vehicle stopped by the house and turned its lights off. A passenger left the vehicle, went
into the house, and returned approximately two minutes later. Then the car drove down the street. 
Dawes followed and observed that the vehicle failed to stop at a designated stopping point. Dawes
stopped the vehicle. A female was driving the vehicle. Ron was in the front seat holding M.B. in
a car seat, but the car seat was not properly fastened. Dawes identified Ron as the passenger who
exited and returned to the vehicle earlier at the known drug residence. Christina was in the rear
passenger seat along with two other children. After the driver denied Dawes permission to search
the vehicle, a canine officer performed a free air search. The canine officer immediately alerted to
the front and passenger side doors of the vehicle where Ron and Christina were sitting. Dawes
searched the vehicle and found a crack pipe in the front passenger seat where Ron was sitting. He
discovered a small piece of what he believed was crack cocaine in the rear middle passenger seat.
Further, Dawes found a prohibited weapon in a cloth bag identified as Ron’s. According to Dawes,
he found a crack cocaine pipe on Christina’s person. As a result, Dawes arrested Ron and Christina.
Dawes admitted that he did not find marijuana or anything similar in the vehicle. Dawes testified
that he arrested Ron and Christina on the day of the trial for outstanding warrants.
          Phyllis Kidwell, the CASA advocate for M.B., testified that, in January 2004, M.B. was
approximately six months old and had respiratory difficulties, possibly chronic, that required several
series of antibiotics. According to Kidwell, M.B. was developmentally on target, and, at the time
of trial, he was on target or above. She also observed visits between both parents and M.B. at the
Department’s Jacksonville office. When both parents visited, Ron read books to M.B. and did most
of the caretaking duties, i.e., changing diapers. Kidwell admitted that Ron never acted
inappropriately with M.B. and, in fact, expressed love to and for the child. M.B. also interacted with
Ron by smiling and cooing at him. According to Kidwell, Christina ceased visiting M.B. at some
point and stated that she was going to drug treatment. However, Kidwell later discovered that she
did not go. In March 2004, Ron also ceased visiting M.B. Kidwell testified that M.B. was doing 
well in his foster home, appeared developmentally on target or above, spoke some words with a lot
of vocalization, walked, ran, and looked very healthy. Although Kidwell discovered from the case
record that M.B. was born addicted to cocaine, he appeared free of any symptoms. However,
Kidwell admitted that she had no documentation to support the case record. Kidwell believed that
it was in M.B.’s best interest that Ron’s and Christina’s parental rights be terminated. She also
believed that M.B. was adoptable. 
          Regarding the night of December 17, 2003, Ron denied leaving the vehicle and was under the
impression that they were borrowing someone’s car. Ron stated that he never saw the prohibited
weapon. Ron admitted that he had problems in the past with drugs and that, currently, he
“infrequently” had a problem with drugs. He denied using drugs when M.B. was removed from him. 
In fact, Ron denied ever using cocaine in the past, but admitting using opiates that necessitated
treatment with methadone. 
          Ron stated that when M.B. was removed, his family became extremely dysfunctional. Ron
testified that Christina has “issues.” She began to break down and he had to take care of her.
According to Ron, working, taking care of Christina, and dealing with the Department became
trying. In his opinion, Christina could have learned how to deal with the situation if given time. Ron
admitted that he could not take care of Christina and go to drug rehabilitation at the same time. In
his opinion, Christina needed counseling because she became overwhelmed easily and had a hard
time “processing emotions and dealing” with these types of situations. Ron denied knowing that
Christina was using drugs when she was pregnant with M.B. until two or three days before M.B. was
born. Thus, he was not surprised when he discovered that M.B. was born with cocaine in his system. 
          Ron admitted not attending the first hearing on M.B.’s removal because he did not know he
was supposed to be there until too late. He acknowledged not staying in contact with his attorney
because “when . . . things are not going right,” he tended not to keep in touch with people. Ron
admitted that he missed a court date resulting in a warrant and that his house had fallen into
“disarray.” Ron testified that he could take care of his criminal problems. He stated that, if he was
given some time, he could take care of M.B. even if Christina was unable to do so. He stated that
he loved his son and that he was a good father. Ron also stated that he did not want his son around
drugs. 
          Christina testified that she did not understand why she was at trial that day. She stated that
she wanted to go home and that she loved her son. She would rather “die” than be without M.B.
Christina testified that she believed Ron could provide a stable home for their child. However, she
stated that she needed to be in the hospital because she could not control herself. Both the attorney
ad litem and CASA recommended termination of Ron’s and Christina’s parental rights.
          Although there is conflicting testimony regarding Ron’s parenting ability and his insistence
that he could provide a stable home for M.B., even without Christina, the trial court could have
disregarded his testimony. The trial court could have found that Ron tested positive for cocaine on
three occasions from February to September 2004, that he admitted not being able to handle the
demands of his wife and the Department, and that he knew Christina was using drugs while pregnant
with M.B. Moreover, this evidence was not so significant that a reasonable trier of fact could not
have reconciled this evidence in favor of its finding and formed a firm belief or conviction that
terminating Ron’s parental rights was in the best interest of M.B. Accordingly, Ron’s fifth issue is
overruled.
          Although there is conflicting testimony regarding Christina’s ability to adequately deal with
her family life at some point in time, the trial court could have disregarded this testimony. The trial
court could have found that Christina tested positive for cocaine on two occasions from February to
September 2004, that she admitted needing to be hospitalized, that M.B. tested positive for cocaine
at birth, and that Christina was unable to deal with her family life. Moreover, this evidence was not
so significant that a reasonable trier of fact could not have reconciled this evidence in favor of its
finding and formed a firm belief or conviction that terminating Christina’s parental rights was in the
best interest of M.B. Accordingly, Christina’s fifth issue is overruled.
 
Conclusion
          Based upon our review of the record, we conclude that the trial court did not err in finding 
that Ron and Christina failed to comply with the provisions of a court order that specifically
established the actions necessary for them to obtain the return of a child who had been in the
permanent or temporary managing conservatorship of the Department for not less than nine months
as a result of the child’s removal from the parent under Chapter 262 for the abuse or neglect of the
child. Because we concluded that the trial court found one ground of termination under subsection
161.001(1), we need not address Ron’s or Christina’s first, second, and third issues. Further, the trial
court did not err by finding that terminating Ron’s and Christina’s parental rights is in the best 
 
 
interest of M.B. Therefore, the judgment of the trial court is affirmed.
 
 
 
                                                                                        SAM GRIFFITH 
                                                                                                   Justice
 
 
Opinion delivered November 30, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.












 














(PUBLISH)