# NO. 12-14-00054-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| | § | *APPEAL FROM THE 420TH* |
| *IN THE INTEREST OF* | § | *JUDICIAL DISTRICT COURT* |
| *N.H. AND M.H., CHILDREN* | § | *NACOGDOCHES COUNTY, TEXAS* |

*MEMORANDUM OPINION*

K.H. appeals the termination of her parental rights. In two issues, she challenges the order of termination. We affirm.

## BACKGROUND

K.H. is the mother of N.H., born January 4, 2010, and M.H., born August 6, 2011. D.L.D., II is N.H's alleged father, and A.E. is M.H.'s father. Neither father is a party to this appeal. On September 5, 2012, the Department of Family and Protective Services (the Department) filed an original petition for protection of N.H. and M.H., for conservatorship, and for termination of K.H.'s parental rights. The Department was appointed temporary managing conservator of the children, and K.H. was appointed temporary possessory conservator with limited rights and duties.

At the conclusion of the trial on the merits, the trial court found, by clear and convincing evidence, that K.H. had engaged in one or more of the acts or omissions necessary to support termination of her parental rights under Texas Family Code Section 161.01, subsections (1) (D), (1) (E), and (1) (O). The trial court also found pursuant to Texas Family Code Section 161.003, by clear and convincing evidence, that K.H. had a mental or emotional illness or a mental deficiency that rendered her unable to provide for the physical, emotional, and mental needs of the children. Further, the trial court found that termination of the parent-child relationship between K.H. and the children was in the children's best interest. Based on these findings, the

trial court ordered that the parent-child relationship between K.H. and the children be terminated. This appeal followed.

<h2>TERMINATION OF PARENTAL RIGHTS</h2>

Involuntary termination of parental rights embodies fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.–Texarkana 1995, writ denied). Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.–El Paso 1998, no pet.).

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (West 2014); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.–Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the first subsection of the statute. TEX. FAM. CODE ANN. § 161.001(1) (West 2014); *Green v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.–El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(2) (West 2014); *In re J.M.T.*, 39 S.W.3d at 237. Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

Additionally, Section 161.003 of the Texas Family Code provides for termination of parental rights if the court finds that a parent has (1) a mental or emotional illness or a mental deficiency that renders the parent unable to provide for the physical, emotional, and mental needs of the child; (2) the illness or deficiency, in all reasonable probability, proven by clear and convincing evidence, will continue to render the parent unable to provide for the child's needs until the eighteenth birthday of the child; (3) the Department has been the temporary or sole managing conservator of the child of the parent for at least six months preceding the date of the hearing on the termination; (4) the Department has made reasonable efforts to return the child to the parent; and (5) the termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.003(a) (West 2014).

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014). The burden of proof is upon the party seeking the deprivation of parental rights. *In re J.M.T.*, 39 S.W.3d at 240.

## STANDARD OF REVIEW

When confronted with both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.–Amarillo 1999, no pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id*.

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id*. at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.–Houston [1st Dist.] 1997, pet. denied).

## TERMINATION UNDER SECTION 161.001(1)

As part of her first issue, K.H. argues that the evidence is legally and factually insufficient to support a finding that she had a mental condition of the type described in Texas

3

Family Code Section 161.003. In her second issue, K.H. argues that the evidence is legally and factually insufficient to support a finding that she had engaged in one or more of the acts or omissions necessary to support termination of her parental rights. More specifically, she contends that the evidence does not support termination of her parental rights under either subsections (1)(E) (endangerment by conduct) or (1)(O) (failure to comply with a court-ordered service plan) of Texas Family Code Section 161.001. However, she does not challenge the trial court's findings on the grounds for termination alleged under subsection (1)(D) (endangerment by conditions or surroundings).

A finding of only one ground for termination alleged under Section 161.001(1) is sufficient to support a judgment of termination. *In re E.M.N.*, 221 S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.). Thus, to be successful on appeal, K.H. must establish that the trial court's findings on all the Department's pleaded grounds are unsupported by the evidence. *See Fletcher v. Dep't of Family & Protective Servs.*, 277 S.W.3d 58, 64 (Tex. App.—Houston [1st Dist.] 2009, no pet.). When a parent does not challenge an independent ground that may support an order of termination, and the trial court found that termination was in the child's best interest, we cannot address any of the grounds for termination. *See In re A.V.*, 113 S.W.3d 355, 361-62 (Tex. 2003); *Fletcher*, 277 S.W.3d at 64. Instead, we must overrule the challenges the parent has chosen to assert. *See In re A.V.*, 113 S.W.3d at 361-62; *Fletcher*, 277 S.W.3d at 64.

Because K.H. does not challenge every ground upon which the trial court based its decision to terminate her parental rights, we do not address the omitted grounds or the ground she chose to challenge in her second issue. Accordingly, we overrule the portion of K.H.'s first issue pertaining to the trial court's mental condition finding and also overrule her second issue.

## BEST INTEREST OF THE CHILDREN

In the remaining portion of her first issue, K.H. argues that the evidence is legally and factually insufficient to support a finding that termination of her parental rights was in the best interest of the children. In determining the best interest of the child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the

4

home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

This list is not exhaustive, but simply indicates considerations that have been or could be pertinent. *Id.* However, the best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). The *Holley* test focuses on the best interest of the child, not the parent's best interest. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). We apply the *Holley* factors below.

**The Evidence**

The evidence shows that this case began in August 2012. Eugene Hickman, a Department investigator, testified that at that time, he began investigating K.H. for allegations of neglectful supervision. He contacted K.H. and her mother, J.H., and went to K.H's home. Hickman said that the home was in bad condition, very disorganized, and infested with roaches in the refrigerator, closet, and clothing. In his opinion, the home posed a health risk to the children. Adult Protective Services agreed to replace the air conditioner and exterminate the home. However, K.H. and J.H. had to clean the home first. From August 27 to August 30, 2012, Hickman made a number of visits to the home and said that there was no change in its condition. On August 30, 2012, Hickman asked K.H. to sign a child safety plan that outlined the specific tasks necessary to remove the safety threats from the home.

On August 31, 2012, Hickman received a telephone call from his supervisor that the Nacogdoches Police Department had N.H., K.H.'s oldest child. The child was at the police station because no one picked him up from Head Start. Hickman went to K.H.'s house where he found her with M.H., her younger child. Even though J.H. gave K.H. money to take the bus to pick up N.H. at Head Start, K.H. said that she did not feel like riding the bus. When Hickman returned with N.H., K.H. did not show any emotion. At that time, K.H. was eating fast food and was told that N.H. had not eaten. She was directed to give him some food, but refused. That same day while Hickman was at K.H.'s home, N.H. ran into the street, but neither K.H. nor J.H. did anything. Ultimately, Hickman had to take N.H. back to the house.

Hickman prepared another safety plan that directed J.H., K.H.'s mother, to help supervise the children over the coming weekend. He said that J.H. had some concerns about K.H.'s ability

5

to parent her children that led to his questioning J.H.'s willingness to keep the children safe. Hickman stated that the children were removed from K.H. the following Monday because of the continuing threat to them and the lack of improvement in their situation. Before the children were removed, J.H. reported that K.H. sat in the front yard and ate dirt, hit N.H. at night, refused to feed her children, and stayed out all night.

DeAnn Stewart, a Department caseworker, testified that she has been the caseworker for N.H. and M.H. since January 2013. She stated that K.H. did not comply with her family service plan. Although K.H. completed a psychological evaluation, she did not complete counseling and only recently complied with the requirement to go to the Burke Center for counseling. K.H. lived with her mother and the home was cleaned with community assistance. However, Stewart was not allowed inside the house in February 2013.

Stewart described K.H. as hostile and rude towards her, and said that she refused to speak about her children. Before K.H. gave birth to another child in August 2013, she refused to take medications, stating that she did not like the way they made her feel. Stewart stated that when she removed K.H.'s newborn baby from the hospital, she was hostile, threw a full tray of food or utensils at the hospital door, spoke in "tongues," and yelled at her. Later, K.H. told Stewart that she had been putting a curse or spell on her and that she removed it later. Stewart stated that since K.H.'s third child was born and she began taking medications, K.H. has become friendly, open, honest, and cooperative. She described K.H.'s current demeanor as childlike. Even though K.H.'s behavior and interactions improved, Stewart did not believe she was able to provide her children with a safe environment because there was no change in her mental abilities or ability to function. She stated that there was no guarantee that K.H. would remain compliant with her medication. K.H. did not have any support group in her life that could be a surrogate parent for her children, including her mother.

Stewart stated that K.H. interacted with her children "pretty good," but was partial to the newborn baby. She said that K.H. did not give N.H. or M.H. significant attention, did not interact with them, and asked to see the baby but not N.H. or M.H. At one visit, she said, K.H. struck one of the children and the Department discontinued visitation. According to Stewart, N.H. was in foster care and M.H. was placed with his paternal grandparents. Both children were doing well and the Department's plans were for both children to be adopted. N.H. had special

needs, attended Head Start, and was in occupational and physical therapy. Stewart believed it was in the children's best interest for K.H.'s parental rights to be terminated.

J.H., K.H.'s mother, testified that K.H. lived with her. She admitted that when she asked K.H. to help keep the house clean, she did not because she did not want to do so. J.H. stated that in August 2012, she tried to clean her house but K.H. did "things behind" her back. J.H. said that she could not see how she could have stopped K.H.'s behavior. She said that her home was currently stable, clean, and bug free, and she made sure K.H. took her medication. According to J.H., she would be able to assist K.H. and provide primary care for the children if they were returned.

Charlotte Ingle, a licensed professional counselor and licensed psychological associate with the Burke Center, also testified. She stated that according to records from the Burke Center, K.H. was diagnosed on December 7, 2000, with "mental retardation with significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested during the developmental period,." Her scores indicated that she would not be able to live independently, having an overall age equivalent of eight years and six months. She was also diagnosed with attention deficit disorder.

Dr. Angus Don Walker, a psychologist, testified that he performed a psychological evaluation on K.H. He described her attitude during the evaluation as "devil-may-care" or "I could care less." She informed Dr. Walker that she was sometimes depressed, and some of her responses suggested mild depression. Dr. Walker stated that K.H.'s responses to one test could not be scored even though she understood the concept of "true" and "false." She scored 63 on the IQ test indicating mild retardation. He suggested there was not enough data to rule out the possibility that K.H. had a personality disorder. Her speech was "very simplistic" and very concrete. According to Dr. Walker, K.H. was unable to count by 3s, to subtract 7 from 100, to say the letters of a word in reverse order, and to solve some very simplistic math or practical problems. Dr. Walker believed that K.H. would not be able to provide for the physical, emotional, and mental needs of her children. He did not believe counseling or social skill training would improve her abilities. In his opinion, K.H. would need a surrogate, not assistance, to raise her children, i.e., someone to live with her and to "trump" her decisions and direct the children.

Janice Robinson, a licensed counselor, testified that K.H. was referred to her by the Department for counseling to address her parenting skills, and the ability to manage and keep a stable home. From January 2013 through March 2013, she made ten appointments with K.H. However, K.H. appeared for only five sessions. Robinson described K.H.'s progress as "very limited" because she was "somewhat hostile" in the beginning, was hard to engage with and often "sullen," and did not seem to want to work the program in order to get her children. She stated that K.H. was not very verbal, had very limited insight and willingness to work on problems, was easily offended if Robinson brought up subjects that she did not like, and seemed angry. According to Robinson, K.H. told her that she had been prescribed Adderall for her attention deficit disorder. However, she assumed K.H. was no longer taking that medication because she was pregnant. Robinson testified that during the last counseling session, K.H. was sullen, would not say anything, and would not leave until Robinson threatened to call law enforcement if she was not willing to leave or talk to her. At that point, she said, K.H. left. Robinson did not believe that placing children in her care would be in the best interest of the children.

## Conclusion

Viewing the evidence relating to the *Holley* factors in the light most favorable to the finding, we hold that a reasonable fact finder could have formed a firm belief or conviction that termination of K.H.'s parental rights was in the best interest of the children. However, K.H. points out that she made strides towards improving her behavior, demeanor, and attitude, and resolved the cleaning issues with her house. She also contends that she was not offered any parenting classes and therefore no one knew whether she could improve her parenting skills, Further, there was some indication that she could parent the children with the assistance of her mother or some other person. Although this evidence is contrary to the trial court's finding, it is not so significant that a reasonable trier of fact could not have reconciled this evidence in favor of its finding and formed a firm belief or conviction that terminating K.H.'s parental rights was in the best interest of the children. Therefore, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of K.H.'s parental rights is in the best interest of the children. Accordingly, we overrule that portion of K.H.'s first issue regarding the best interest of the children.

## DISPOSITION

Having overruled all of K.H.'s issues, we *affirm* the judgment of the trial court.

**BRIAN HOYLE**
Justice

Opinion delivered June 25, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JUNE 25, 2014**

**NO. 12-14-00054-CV**

**IN THE INTEREST OF N.H. AND M.H., CHILDREN**

Appeal from the 420th District Court

of Nacogdoches County, Texas (Tr.Ct.No. C1228572)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*